Patterson, J.
Heard on error.
Tlte parties in tbis ease stand in the same order in which they stood in the case below. The plaintiff in its petition alleges that it is a partnership.doing business in the state of Ohio,- that the *178 defendant in the year 1913, by resolution duly passed, declared it necessary to construct an addition to its then existing school building in the village of Johnstown, and to provide a new heating and ventilating system for its then existing building as well as for the new addition; that notice was given for four consecutive weeks in a newspaper of general circulation in said school district. That plaintiff thereupon submitted to defendant its proposal to furnish the material and to perform the labor necessary to make such improvements, except the heating and ventilating system; that on the 11th day of July, 1913, plaintiff’s proposal was submitted to said board and was declared to be the lowest and best bid for furnishing material and labor for the said work, and was accepted by the defendant, and notice of such acceptance immediately served by defendant upon plaintiff who accepted service of said notice and thereupon proceeded to enter upon the work of making said improvements covered by its said proposal. That it entered into a bond in the sum of $8,000 conditioned according to law which was approved by the defendant. That the defendant prepared, and presented to plaintiff, a written memorandum which plaintiff signed, providing for the construction of said addition to said school building according to plans and specifications.
Plaintiff says that it has completed that part of the improvement covered by its proposal according to the terms thereof, and according to the plans and specifications, and that the architect has approved such work, or improvement, as constructed by plaintiff, and on the 22nd day of April, 1914, so notified defendant and issued a final estimate to defendant to pay plaintiff the balance due it for making its part of said improvement; that the cost of said improvement was the sum of $11,549, under the terms of the contract, and that extras in the sum of $20.20 were furnished by plaintiff, which defendant agreed to pay, making the total amount due plaintiff from defendant the sum of $11,-569.20; that plaintiff has received from the defendant, as part pay for the said improvement, the sum of $9,479.70, and that there is still due and owing the plaintiff from the defendant a balance of $2,089.50 with interest from January 15, 1914, for which sum the plaintiff asks judgment.
*179 A demurrer was filed to this petition which was sustained by the court below. An amendment to the petition was filed, by leave of court, amending plaintiff’s petition by inserting between lines 11 and 12 on page three of said petition the following :
“Plaintiff further says that at the time said board of education accepted plaintiff’s bid on July 11th, 1913, and at the time plaintiff and defendant signed said written memorandum said defendant had sold for $16,267.20 the lawfully authorized bonds of said village school district of the par value of $16,000. Said bonds were sold for the purpose of erecting an addition to the then existing public school building of said village, and to place in said school building, when so enlarged, a heating and ventilating system and to repair the then existing school building and the school grounds. Plaintiff further says that at said last named times, said bonds were in process of delivery; and that there was then an unappropriated balance of said siim of $16,-267.20 sufficient to pay plaintiff the amount due it under its said contract with defendants.”
A general demurrer was filed to the amended petition which was sustained by the court, and the plaintiff not desiring to plead further final judgment was rendered against the plaintiff and in favor of the defendant, and to reverse this judgment a petition in error is filed in this court.
The question presented for determination is, Whether it is necessary under the circumstances of this case that the clerk of the defendant board of education should certify that the money required for the payment of the defendant’s obligation, under this contract with plaintiff, was in the treasury and unappropriated for any other purpose, in order that the contract might be valid and that plaintiff could collect the contract price ?
The statutes relating to public contracts must be strictly adhered to and strictly construed, and it is now well settled that there can be no recovery upon a quantum meniit, and that to state a good cause of action against this school board it is necessary that the petition should declare upon a contract, agreement, obligation or appropriation made and entered into according to the statutes.
*180 In support of this we would call attention to the case of Wellston v. Morgan, 65 O. S., at page 228:
“There has been no common law implied municipal liability-in this state since the passage of the act of April 8, 1876, amending Section 97 of the Municipal Code, 73 O. L., 125, and carried into the Revised Statutes as Section 1693, because that section conflicts with the common law as to such liability, and whenever a statute is in conflict with a rule of the common law, or of equity, the statute must prevail.
Before the passage of that act, there were holdings by this court which seemed to recognize implied municipal liability, notably Cincinnati v. Cameron, 33 Ohio St., 336, and since that time there have been some expressions in opinions which seemed to recognize the same implied liability, but in none of those later eases were the provisions of the statute invoked by counsel, or considered by the court; and in the late cases of McCloud v. Columbus, 54 Ohio St., 439; City of Lancaster v. Miller, 58 Ohio St., 558; Buchanan Bridge Co. v. Campbell, 60 Ohio St., 406, and Comstock v. Nelsonville, 61 Ohio St., 288, full force has been given to the restrictive statutes of the state, and implied liability denied, and the doctrine established that public officers can incur obligations against those for whom they act, only in pursuance of the provisions of the statutes, and that they can not deal upon the quantum meruit, or reasonable value plan. With these holdings we are content.
A strict adherence to the provisions of the restrictive statutes of the state will be for the general good; and it devolves upon those who deal with public officers, to see for themselves that the statutes have been complied with.
There being no implied municipal liability in cases ex contractu, under our restrictive statutes, it follows that to state a good cause of action against a municipality in such cases, the petition must declare upon a contract, agreement, obligation, or appropriation made and entered into according to statute. A petition on an account merely or quantum meruit, in such cases, is not sufficient.”
The question presented in this case involves the construction of Sections 5660 and 5661, General Code, which are as follows:
“Sec. 5660. The commissioners of a county, the trustees of a township and the board of education of a school district, shall not enter into any contract, agreement or obligation involving the expenditure of money, or pass any resolution or order for *181 the appropriation or expenditure of money, unless the auditor or clerk thereof, respectively first certifies that the money required for the payment of such obligation or appropriation is in the treasury to the credit of the fund from which it is to be drawn, or has been levied and placed on the duplicate, and in the process of collection and not appropriated for any other purpose; money to be derived from, lawfully authorized bonds sold and in the process of delivery shall, for the purpose of this section, be deemed in the treasury and in the appropriate fund. Such certificate shall be filed and forthwith recorded, and the sums so certified shall not thereafter be considered unappropriated until the county, township or board of education is fully discharged from the contract, agreement or obligation, or as long as the order or resolution is in force.”
“Sec. 5661. All contracts, agreements or obligations, and orders or resolutions entered into or passed contrary to the provisions of the next preceding section, shall be void, but such section shall not apply to the contracts authorized to be made by other provisions of law for the employment of teachers, offiversT and other school employees of boards of education.”
The words in italics in Section 5660 will not be found in the section prior to its last amendment March 29, 1910 (101 O. L., 37). Similar provisions of the General Code relating to municipalities will be found in Sections 3806 to 3810, inclusive. Sections 3806, 3807, 3808 and 3809 were originally in one section and were Section 45 of the Municipal Code found in 86 O. L., 37, and this section was carried into Bates’ revision of the Revised Statutes as Section 1536-205. Section 3806 is substantially the same as Section 5660 omitting the words in italics. Section 3807 is substantially the same as 5661; Section 3809, as amended, 103 O. L., 526, provides for certain exceptions to the limitations of 3806; Section 3810 reads as follows:
“Money to 'be derived from lawfully authorized bonds or notes sold and in process of delivery, shall for the purpose of the certificate that money for the specific purpose is in the treasury, be deemed in the treasury and in the appropriate fund. ’ ’
Section 3810 was first enacted March 21, 1904, 97 O. L., 44, and was then designated as Sections 45a and was carried into Bates’ revision of the Revised Statutes as Section 1536-205a.
*182 It will be observed that about the only difference in the statutes relative'to the certificate and relative to the sale of bonds is that these provisions are all embodied in Section 5660 in relation to the boards and officers therein mentioned, while as regards municipalities the provisions are in two Sections 3806 and 3810.
It is contended on the part of the plaintiff in error that inasmuch as the defendant in error sold bonds for the contemplated improvement the certificate of the clerk was not necessary.
This certificate has a two-fold purpose not only to protect the contractor by indicating the amount of money which has been appropriated for the fulfillment of his contract, and of 'which he is bound to take notice, but for the larger purpose of protecting the general public and taxpayers from extravagent and unwarranted expenditures of money for which no provision has been made by sale of bonds, taxation or otherwise.
In Carthage v. Diekmeier, 79 O. S., at page 341 the court say:
“Whatever may be the correct view as to the meaning of this statute where a single contract is let, it seems to be a reasonable construction that there be a definite sum certified for each contract where there are several of the same species entered into at the same time to be paid from a theretofore gross fund. It would seem conducive, if not necessary to the safety of each contractor, that a definite sum be certified, because it is on the performance of that act by the village clerk that money to discharge the obligation is set apart and appropriated, and which “shall not thereafter be considered unappropriated,” etc. The two branches of the section must be construed together and when so construed, the entire section given its proper operation. Governed by this rule, we can not say that the original certificate in question was drawn in compliance with said statute, and while in case of a single contract in contemplation, to be satisfied from a single fund, such a certificate might be sufficient (but we do not so decide), it is quite clear to us that when the statute is to be applied to the subject matter where several different streets are to be improved for which purpose separate contracts are let on different separate bids, the certificate should contain a specified sum set apart for each of such contracts. Such must have been the construction entertained in the Linden avenue contract, or rather the resolution authorizing the con *183 tract, for the jury found (No. 8) that when the resolution had been read, the solicitor made the objection that the certificate of the clerk contained no specified amount for the improvement of Linden avenue, whereupon the engineer gave the clerk the amount to be inserted for that avenue, and it was" placed on the face of the certificate in figures, and after that the resolution was adopted. These acts of the engineer and clerk can not be safely discarded by the contractor, for in doing so, he must rely on a document which was not drawn in compliance with law, and his whole claim would be illegal and void. Under the facts of this ease as to the nature and number of contracts awarded at the same time, the original certificate did not conform to the statute, and the contractor would be without remedy. But with the figures added to the face of the instrument $2,030 was the sum certified and to that extent the village set apart from the gross fund the amount to cover the Linden avenue improvement. We are told this amount has been paid before suit was brought, and the suit is to recover $2,260 in excess of that amount. ’ ’
And again at page 345 the court say:
“Moreover, it was not within the power of the council or the village engineer to increase the liability of the corporation beyond the amount for which the certificate had been filed, and thereby nullify Section 2702. That would be striking down rather than obeying the statute. No mere final estimate of the engineer, no matter if it is correct in its terms, can increase the corporate liability, neither did the acceptance of the work by the public authorities accomplish that result. If the contractor found he was deceived by the estimate as to quantities and work, and that the improvement could not, be made on such terms, he should have acted promptly and had legal and proper action taken to relieve the dilemma rather than proceed blindly or willingly, expecting that the law and action of council would be relaxed so he could get full compensation by putting another and unexpected burden upon the taxpayers.
“No longer can it be said that the contractor need not look to the legal phases of his negotiations with a municipal corporation. He must be active in protecting himself. This doctrine was announced in McCloud & Geigle v. City of Columbus, 54 Ohio St., 439; and. clearly stated in Lancaster v. Miller, 58 Ohio St., 558. It is there held, not only that the terms of a statute regulating the execution of a contract whereby public money will 'be expended, must be followed, but where the statutory requirements have been omitted, the corporation will not by the *184 acts of its officers be estopped to set up sueb omissions as a defense to an action brought against it on such contract. The strictness of the rule is justified in the opinion of the court on page 575. Among other things, it is there said: ‘Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose.”
In the above case it will be observed that contracts were let for an amount largely in excess of the proceeds of the bonds; that there was one bond issue and a number of separate contracts let for the contemplated improvements.
In the case at bar there was one bond issue and the plaintiff bid only for a part of this work. True its bid is within the bond limit, but the record does not disclose whether all of the bids were within the bond limit or not, nor does it disclose what the estimate or what the contract was for the heating and ventilating of this building. And where there is a single bond issue and different contracts are let for different parts of the improvement we hold that it is a condition precedent and the duty of the clerk to file and record his certificate covering each of these separate contracts and the contractors are bound to take notice at their peril that a sufficient amount of money is in the treasury, and duly certified, to provide sufficient funds for the payment of the money due them.
Our attention has been called to the case of Akron v. Dobson, 81 O. S., 66, and the third syllabus of that ease is as follows:
“Section 1536-205, Revised Statutes, providing that no contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or other order for the expenditure of money, be passed by the council or by any board or officer of the municipal corporation, unless the auditor of the corporation shall first certify to council that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury, to the credit of the fund from which it is to be drawn and not appropriated for any other purpose, does not apply to an ordinance appropriating the money obtained by council, from a sale of bonds made by it, to the purpose for which the bonds were sold.”
*185 Our attention has also been called to Emmert v. Elyria, 74 O. S., 185, and the second syllabus in that case is as follows:
“Sections 45 and 45a of the municipal code (1536-205 and 1536-205a, Revised Statutes, Bates 5th Ed.), providing in substance that no contract invplving the expenditures of money shall be entered into unless the auditor of the corporation shall first certify to council that the money required for the contract is in the treasury to the credit of the fund from which it is to be drawn and not appropriated for any other purpose and that a contract entered into contrary to such provision shall be void and that the money to be derived from lawfully authorized bonds or notes sold and in process of delivery shall be deemed in the treasury and in the appropriate fund, do not apply to contracts for street improvements, when bonds have been authorized by the municipality to be issued to pay the entire estimated cost and expense of the improvement.”
It is somewhat difficult to harmonize or distinguish the three cases cited above.'
In Akron v. Dotson, at page 77, the court say:
“It is also contended that the contract is void because the auditor did not certify to the council that the money required for the contract was in the city treasury as prescribed by Section 1536-205, Revised Statutes. The supplemental petition avers that the auditor did not so certify. This is denied by the answer in the circuit court, and that court does not make any finding upon that issue.”
So that in this case the question does not seem to have been decided by the circuit court. The petition averring that the auditor did so certify, which averment was denied in the answer and the circuit court making no finding upon this issue.
Emmert v. Elyria was an injunction suit seeking to enjoin the city of Elyria from paying the balance due on a paving contract. The certificate of the auditor of the city that the money necessary for said improvement was in the treasury to the credit of the proper fund and unappropriated for any other purpose' was filed with the clerk of the council, and also in the office of the board of public service of said city on the same day and immediately before said contract was let. At page 194 the court say:
*186 “But, 'because a municipality is not legally liable to pay for a public improvement, it does not follow tbat it is not under a moral obligation to do so or that a court because it will not enforce payment will enjoin it. The contract for paving this street is not ultra vires. If invalid it is merely so because the contract was made before the bonds to provide the money to pay for it were sold. Now that the work has been done in accordance with the contract and the bonds have been sold and the money to pay for it is in the treasury, it is right that it-should be paid for and a court of equity ought not, unless its failure to do so would defeat the purpose of the law, prevent the municipality from doing what equity and fair dealing would exact from an individual.”
And the third finding by the circuit court on page 189 is as follows:
“At the time said certificate was filed there was no cash in the proper fund and unappropriated in said treasury for said improvement, but bonds of said city wherewith to provide such cash, had 'been duly authorized. Said bonds had not been sold nor were there any notes of said city then sold and in process of delivery, and said facts were all well known to all the defendants ; who, however, in good faith,' and pursuant to the advice of the solicitor of said city, proceeded with said improvement, believing that their proceedings were lawful.”
So that the real question in this ease seems to have been not that a certificate was not filed, 'but that the contract was invalid because the contract was let before the bonds were sold for the improvement.
In Carthage v. Diekmeier a certificate and an amended certificate were duly filed and the contract then executed and that the amended certificate is a limitation on the amount to be paid on the contract for the street, beyond which the corporation is not liable to the contractor; that in Emmert v. Elyria a certificate was filed but was filed before the bonds for the improvement were sold. So that in both of the above cases certificates were filed and recorded, and in the case of Akron v. Dobson there was an allegation that the certificate was filed, which was denied by the answer and no finding was made by the court upon the issue thus joined.
*187 In the ease at bar it is shown by the pleadings and conceded in the argument that no certificate whatever was filed, or recorded or attempted to be filed or recorded, the contractor relying solely upon the fact that bonds of the school district had 'been sold and were in the process of delivery in the sum of $16,-267.20 a sum sufficient to pay plaintiff its contract. The pleadings show that there was one bond issue for the entire contemplated enlargement and improvement of the school house, but that the plaintiff did not enter into a contract for all of the contemplated improvements. The contract for the heating and ventilating was a separate and distinct contract and the record does not disclose the .amount of this contract or whether there were any further contracts to be entered into in order to complete the improvements.
This decision may seem somewhat harsh and technical, but courts do not make the laws. Their duty is to interpret them as they find them; and it is important that public officers as well as contractors should be familiar with their powers and duties and rights and liabilities under the section herein construed.
The amendment to Section 5660 as found in 101 O. L., 37 wás certainly made for some purpose and in construing this purpose we hold that 'the intention of this amendment was to require the clerk, or other proper officer, to make a certificate that the money was in the treasury when bonds were sold and in the process of delivery — the money not being actually but constructively in the treasury; that the object of this amendment, as claimed by the plaintiff in error, was not to dispense entirely with a certificate by such officer when bonds were sold, keeping in mind the fact that the object of the entire section is for the protection of the contractor and the general public. Entertaining these views the judgment of the court of common pleas in sustaining the demurrer to the petition and the amendment to the petition and in rendering final judgment will be affirmed.
Judgment affirmed.
Houck, P. J., and Shields, J., concur.