**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1091
_____

MICHAEL SIMKO,

Appellant

v.

UNITED STATES STEEL CORP
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.:  2:19-cv-00765)
District Judge:  Honorable Joy Flowers Conti
_____

Argued September 24, 2020

(Filed March 29, 2021)

Before:  McKEE, JORDAN and RENDELL, *Circuit Judges*.

John E. Egers, Jr. (**Argued**)
Julian Law Firm
71 North Main Street
Washington, PA 15301

       Counsel for Appellant

Gail S. Coleman (**Argued**)
Equal Employment Opportunity Commission
131 M. St., N.E.
Washington, D.C. 20507

Counsel for Amicus Appellant
Equal Employment Opportunity Commission

Rodney M. Torbic (**Argued**)
United States Steel Corp
600 Grant Street, Suite 1515
Pittsburgh, PA 15219

Counsel for Appellee

_____

O P I N I O N
_____

**RENDELL**, *Circuit Judge*.

In this employment discrimination case, Michael Simko asserts one claim of retaliation against his former employer, United States Steel Corp., under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Simko alleges that in August 2014 he was discharged in retaliation for filing an administrative charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") approximately fifteen months earlier. Simko's original charge—which alleged that U.S. Steel disqualified him for another position on the basis of his hearing disability—was timely filed. But he never filed a timely charge of retaliation that formed the basis for his complaint before the District Court. The District Court held that the later claim of retaliation was not encompassed within the earlier charge, and, therefore, that his failure to file a timely retaliation charge was fatal. Accordingly, the District Court dismissed his complaint for failure to exhaust administrative remedies. We will affirm.

## I. BACKGROUND[1]

Simko, who suffers from hearing loss, began working for U.S. Steel in August 2005. In August 2012, while he was employed as a Larryman in the Blast Furnace Department of the U.S. Steel plant in Braddock, Pennsylvania, he successfully bid on an open position as Spellman in the Transportation Department. During training for the position, Simko requested a new two-way radio from a Transportation Department supervisor to accommodate his hearing impairment, but U.S. Steel did not provide the new radio or any other accommodation. Although Simko completed the Spellman training, he alleges that his trainer refused to approve his completion of the training and "sign off" that he was able to perform the Spellman duties because of his disability. App 33. Having failed to secure the Spellman position, Simko resumed working as a Larryman in the Blast Furnace Department.

### A. Simko's Original Charge and Initial Discharge

On May 24, 2013, Simko signed an EEOC charge alleging violations of the ADA against U.S. Steel. The only box checked on the original charge was for "[d]iscrimination based on . . . disability." App. 33. Specifically, Simko asserted that U.S. Steel discriminated against him by denying him the Spellman position and denying his request for an accommodation. Simko also alleged in the charge that he was later "subjected to negative comments from other employees regarding my impairment," including one instance in which the "Walking Boss" told him that "[i]f I couldn't hear, I must be

---

[1] The facts are drawn from Simko's complaint and exhibits to the parties' briefs in support of, and opposition to, U.S. Steel's motion to dismiss. In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018). The parties have not disputed the authenticity of any documents in the record.

3

disabled and should not work anywhere in the plant." App. 34. The EEOC received the charge on May 28, 2013. By letter dated August 7, 2013 to the EEOC, a U.S. Steel Labor Relations official denied Simko's allegations of discrimination. The EEOC did not take any action to investigate the charge or U.S Steel's August 7, 2013 letter.

On December 30, 2013—while Simko's charge was still pending—U.S. Steel discharged Simko after an incident in which a car he was operating lost power. Approximately five months later, on May 27, 2014, Simko entered into a "last chance agreement" with U.S. Steel and his union providing for his reinstatement. Simko returned to work under the last chance agreement on June 1, 2014, but he was discharged again on August 19, 2014[2]—this time, based on a safety violation. Although Simko grieved the discharge through his union, the union later withdrew the grievance.

## B.    The November 2014 Correspondence

On November 14, 2014,[3] approximately three months after Simko's final discharge from U.S. Steel, the EEOC received an undated handwritten letter and set of documents from Simko ("November 2014 correspondence"). The November 2014 correspondence comprised 14 pages, including what appears to be Simko's handwritten notes regarding a union hearing on the violation of his last chance agreement, a copy of his last chance agreement, copies of safety incident reports, and, in the final three pages, a handwritten note that urged that he was discharged in retaliation for his filing of the original discrimination charge with the EEOC. In relevant part, the letter provided:

Since I have filled [sic] the charges with the

---

[2]    Simko initially received a five-day suspension, which was ultimately converted to a discharge.

[3]    Simko and the EEOC allege that the EEOC received the November 2014 correspondence on November 14, 2014. Because U.S. Steel does not contest this allegation, we will, as the District Court did, assume its truth. The November 2014 correspondence was attached to Simko's response to U.S. Steel's motion to dismiss, but it was not referenced in his civil complaint.

4

EEOC I have been terminated twice and placed on [a] last chance agreement with no just cause by the company. The union only calls me at [the] last minute with information, they are not in contact with me otherwise . . . . *I believe anyone who familiarizes themself [sic] with the details of the case will clearly see it as retaliation for filing charges with the EEOC.*

App. 80–81 (emphasis added).

The EEOC did not take any action in response to Simko's November 2014 correspondence until approximately one year later. By letter dated November 23, 2015, an EEOC investigator notified Simko that he had been assigned to Simko's case. The investigator further wrote that, based upon the November 2014 correspondence, "it appears as though you have been terminated by [U.S. Steel] on two separate occasions during 2014 and that you believe that the terminations were retaliatory against you." App. 84. Simko's EEOC file also contains a handwritten note by the investigator, dated November 23, 2015, indicating that the EEOC contacted the U.S. Steel Labor Relations Department and confirmed that Simko had been discharged.[4] In addition, the note stated, "Amended charge is to follow including retaliatory discharge." App. 83.

### C. The EEOC Investigation, Amended Charge, and Simko's Federal Lawsuit

After the EEOC contacted Simko, he retained counsel to represent him in his EEOC proceedings. By letter dated December 18, 2015, the EEOC investigator communicated to Simko's counsel that the EEOC had notified U.S. Steel "that an amended charge was going to follow." App. 87. On January 22, 2016, Simko's counsel filed an amended EEOC charge. The amended charge addressed Simko's failure to secure the Spellman position and his subsequent discharges from U.S. Steel. The boxes for disability discrimination and

---

[4] The EEOC investigator's November 23, 2015 letter and handwritten note were not attached to the complaint but were attached to Simko's response to U.S. Steel's motion to dismiss.

retaliation were both checked.

After investigating the allegations set forth in the amended charge, the EEOC on February 19, 2019 issued a determination of reasonable cause that U.S. Steel retaliated against Simko. Specifically, the EEOC investigator found that U.S. Steel disciplined Simko more harshly for his violation of work rules and regulations than a non-disabled comparator. The EEOC attempted conciliation of the dispute, but after those efforts failed, it issued a right-to-sue letter on April 1, 2019. On June 28, 2019, Simko filed this lawsuit, asserting only a single count of retaliation in connection with his final discharge from U.S. Steel. It did not allege either disability discrimination or failure to accommodate.

The District Court determined that Simko failed to file a timely EEOC charge asserting his retaliation claim because his amended charge claiming retaliation was filed 521 days after the termination of his employment. The District Court also held that Simko was not entitled to equitable tolling of the ADA's filing deadline because he was not misled by the EEOC or prevented from filing the amended charge, and he offered no reason why he could not file a timely claim. Thus, the District Court concluded that since Simko never filed a timely charge of retaliation with the EEOC, he failed to exhaust his administrative remedies as required by the ADA, and it dismissed his complaint. Simko timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise appellate jurisdiction pursuant to 28 U.S.C § 1291. We review de novo a district court's decision granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014). In reviewing a dismissal under Rule 12(b)(6), we accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

## III. DISCUSSION

Plaintiffs must exhaust their administrative remedies before filing an ADA claim in federal court. *See Churchill v.*

6

*Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) (noting that claims asserted under the ADA must be filed in adherence with the administrative procedures set forth in Title VII); 42 U.S.C. §§ 12117(a), 2000e-5.[5] In Pennsylvania, an aggrieved party must initiate this pre-suit procedure by filing a charge with the EEOC within 300 days of the challenged employment action. *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 854 (3d Cir. 2000); 42 U.S.C. § 2000e-5(e)(1).

It is undisputed that Simko filed his amended EEOC charge of retaliation 521 days after the latest adverse employment action at issue in the civil complaint—his final discharge. Before the District Court and on appeal, U.S. Steel urges that Simko's civil complaint should therefore be dismissed because he failed to file the retaliation charge within the ADA's 300-day filing period.

Despite his failure to meet the 300-day deadline, Simko argues that he nonetheless satisfied the ADA's pre-suit requirements. The EEOC filed an amicus brief in which it also urges that, contrary to the District Court's conclusion, Simko satisfied the ADA's pre-suit filing requirements.[6] Three arguments are advanced in the alternative. First, both Simko and the EEOC contend that his handwritten November 2014

---

[5] While failure to file a timely charge may be a ground for dismissal, that pre-suit requirement does not implicate a district court's subject matter jurisdiction. Rather, "like a statute of limitations, [the filing deadline is] subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that the "charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts").

[6] We noted at oral argument that it was unusual for the EEOC to file an amicus brief in support of an appellant in Simko's position. Counsel for the EEOC stated that the agency "made a mistake" by failing to help Simko convert his November 2014 correspondence into a charge in a timely manner. We appreciate the EEOC's candor, but its acceptance of some degree of fault does not alter our analysis.

correspondence to the EEOC itself constituted a timely administrative charge. Second, the EEOC alone argues that Simko was entitled to equitable tolling of the statutory filing period because the agency failed to promptly act on the November 2014 correspondence. Third, both Simko and the EEOC urge that he did not have to file an additional EEOC charge because his original, still-pending disability discrimination charge encompassed his subsequent claim of retaliation.

We reject these arguments. The first argument was never asserted in the District Court and has not been properly preserved for our review. The second argument was raised only by the EEOC on appeal and, for reasons we explain below, will not be considered. With respect to the final argument, we conclude that Simko's retaliation claim is distinct from his underlying EEOC charge and therefore needed to be raised first in a timely filed charge. His failure to file a timely retaliation claim with the EEOC therefore dooms his case.

### A. We Will Not Reach the Unpreserved Issue of Whether the November 2014 Correspondence Constituted a Charge

Simko and the EEOC both contend that the District Court should have concluded that the November 2014 correspondence—which was sent within 300 days of Simko's final discharge—itself constituted a timely EEOC charge that may serve as the basis for his federal lawsuit. They urge that, despite its informal appearance, Simko's handwritten correspondence included all of the required contents of an administrative charge. But as U.S. Steel points out, Simko never raised this issue before the District Court. In its opinion, the District Court *sua sponte* commented on the handwritten letter, stating that it "d[id] not constitute a 'charge' and Simko d[id] not contend otherwise." *Simko v. United States Steel Corp.*, No. CV 19-765, 2019 WL 6828421, at *3 (W.D. Pa. Dec. 13, 2019). Simko and the EEOC now, for the first time, contend otherwise.

It is well-established that arguments raised for the first time on appeal are not properly preserved for appellate review. *See Del. Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir.

8

2006); *see also Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013) ("We generally refuse to consider issues that the parties have not raised below."). The general rule requiring preservation "serves several important judicial interests," such as protecting the parties from unfair surprise, "preventing district courts from being reversed on grounds that were never urged or argued before [them]," and promoting finality and the conservation of judicial resources. *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (alteration in original) (quoting *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir. 2009)).

As a preliminary matter, the District Court's cursory statement that Simko's handwritten correspondence did not constitute a charge is, alone, insufficient to preserve that issue for our review. U.S. Steel contends that, by failing to raise that issue before the District Court, Simko waived any argument to the contrary. Although we agree with U.S. Steel that Simko did not preserve his argument on appeal, we think that, under our most recent precedent, Simko's failure is better characterized as "forfeiture," not "waiver." *See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 146–47 (3d Cir. 2017). In *Barna*, we distinguished the two terms, noting that "[t]he effect of failing to preserve an argument will depend upon whether the argument has been forfeited or waived." *Id.* at 146. Waiver is the intentional abandonment of an argument. *Id.* at 147. In contrast, forfeiture "'is the failure to make the timely assertion of a right,' an example of which is an inadvertent failure to raise an argument." *Id.* at 147 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Because Simko's failure to argue before the District Court that the November 2014 correspondence qualified as a charge appears inadvertent, we treat that argument as forfeited. *See PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 886 (3d Cir. 2020).

While a court may not entertain waived arguments on appeal, it may review forfeited arguments, but under only "truly 'exceptional circumstances.'" *Barna*, 877 F.3d at 147 (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001)). These circumstances are "very 'limited,'" *id.* (quoting *Webb*, 562 F.3d at 263), and may include cases where

"the public interest requires that the issue[s] be heard or when a manifest injustice would result from the failure to consider the new issue[s]," *United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 335 (3d Cir. 1998) (alterations in original) (quoting *Altman v. Altman*, 653 F.2d 755, 758 (3d Cir. 1981)). Here, Simko offers no reasons for his failure to urge before the District Court that his handwritten correspondence and accompanying documents qualified as a charge. Moreover, there is no public interest implicated or manifest injustice, particularly because Simko knew how to file a formal EEOC charge, as he had done in May 2013. In short, there are no exceptional circumstances justifying departure from our rule requiring preservation. Accordingly, we will not address this issue.

### B. Nor Will We Address the District Court's Ruling on Equitable Tolling

In its amicus brief, the EEOC alone urges that the District Court erred by concluding that Simko was not entitled to equitable tolling of the 300-day statutory filing period. Specifically, the EEOC contends that, if the November 2014 correspondence did not qualify as an administrative charge, the EEOC's failure to promptly convert it to a charge should warrant equitable tolling of the statutory deadline for Simko. Although Simko litigated the equitable tolling issue before the District Court, he did not present it to us as an issue on appeal. We have held that the role of an amicus brief is to "elaborate[] issues properly presented by the parties," not "inject[] new issues into an appeal." *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 382 n.2 (3d Cir. 2012) (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001)). Thus, "[a]n amicus normally 'cannot expand the scope of an appeal with issues not presented by the parties on appeal,' at least not 'in cases where the parties are competently represented by counsel.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (citation omitted) (quoting *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 300 n.10 (3d Cir. 2012)). By raising the equitable tolling issue, the EEOC attempts to resurrect an issue that Simko abandoned on appeal. Accordingly, we will not reconsider the District Court's conclusion that equitable tolling was not warranted.

10

## C. Simko's Original EEOC Charge Did Not Encompass His Subsequent Retaliatory Discharge Claim

Simko's main argument on appeal is that he was not required to file a timely retaliation charge because his retaliation claim was encompassed within his still-pending original charge of disability discrimination. U.S. Steel responds, as it did before the District Court, that Simko's retaliation claim cannot be bootstrapped to the original charge because the two sets of allegations are sufficiently distinct, and under the analysis required by our precedent, Simko should have filed a separate charge for the retaliation claim. We agree with U.S. Steel on this issue.

As noted above, the ADA requires that a plaintiff administratively exhaust all claims before seeking relief in federal court. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001); 42 U.S.C. §§ 12117(a), 2000e-5(b). These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are "essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976); *see also Anjelino v. New York Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) ("[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute."). The Supreme Court has also emphasized that a fundamental aim of the pre-suit requirements is to "give prompt notice to the employer" and "encourage the prompt processing of all charges of employment discrimination." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 121 (2002) (internal quotation marks omitted). The exhaustion requirement thus advances the remedial purposes of the ADA.

The "relevant test" for determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether "the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising

11

therefrom."[7]  *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *see also Robinson v. Dalton*, 107 F.3d 1018, 1025 (3d Cir. 1997) (identifying the "two circumstances in which events subsequent to a filed [EEOC] complaint may be considered as

[7]  The *Waiters* inquiry is a disjunctive test—that is, a plaintiff need not file an additional EEOC charge if the allegations of the civil complaint are fairly within the scope of (1) the pending EEOC charge *or* (2) the investigation arising from the charge.

As Simko notes, however, on at least two occasions, we have treated the inquiry as being conjunctive.  For example, in *Hicks v. ABT Associates, Inc.*, we determined that a

> finding that the EEOC would have discovered a claim for sex discrimination in the course of a reasonable investigation does not itself meet the standard of *Ostapowicz* [and satisfy the exhaustion requirement].  This evidence merely rebuts the presumption that the scope of the actual investigation is "what can reasonably be expected to grow out of the charge of discrimination."  541 F.2d at 398–99.  *The district court must further find* that the sex discrimination claims which would have been uncovered were reasonably within the scope of the charge filed with the EEOC.

572 F.2d 960, 967 (3d Cir. 1978) (emphasis added).  In *Howze v. Jones & Laughlin Steel Corp.*, which was decided less than a year after *Waiters*, we summarized *Hicks* as holding that a "district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges *and* if a reasonable investigation by the EEOC would have encompassed the new claims."  750 F.2d 1208, 1212 (3d Cir. 1984) (emphasis added).  The *Howze* court notably failed to mention *Waiters*.

Notwithstanding this minor conflict of authority, since *Howze* we have consistently applied the disjunctive formulation of the exhaustion test set forth in *Waiters*.  *See Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996); *Robinson v. Dalton*, 107 F.3d 1018, 1025 (3d Cir. 1997); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).  Accordingly, the disjunctive test governs our analysis in this case.

fairly encompassed within that complaint").

The exhaustion inquiry is highly fact specific. Under our precedent, the Court must "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." *Robinson*, 107 F.3d at 1024. Simko and the EEOC urge that we should adopt the broad per se rule followed by some courts of appeals that treat post-charge claims of retaliation as exhausted when they arise during the pendency of a prior charge. *See, e.g.*, *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018); *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). We have said, however, that such a per se rule, "whether express or applied in practice, would eviscerate the remedial purposes of the exhaustion requirement." *Robinson*, 107 F.3d at 1024. We have already rejected this per se argument and will adhere to our precedent that requires a careful examination of the nature of the relevant claims. *See Waiters*, 729 F.2d at 237 n.10 (declining to adopt what the Court characterized as the Fifth Circuit's rule that "all claims of 'retaliation' against a discrimination victim based on the filing of an EEOC complaint are 'ancillary' to the original complaint"); *Robinson*, 107 F.3d at 1024 (also rejecting a per se rule that post-charge retaliation claims "necessarily fall[] within the scope of . . . [previously filed, still-pending EEOC] complaints").[8]

Even interpreting Simko's charge liberally under our fact-specific approach, the retaliation claim based on his August 2014 termination does not fall fairly within the scope of either (1) his original charge of disability discrimination based on his being denied the Spellman position in August 2012, or (2) the EEOC investigation arising therefrom. *See*

---

[8] Similarly, Simko urges that his retaliation claim is sufficiently related to his original charge of disability discrimination under our case-by-case approach because, by definition, retaliation requires a "predicate action protected by the ADA," and his original charge "was a prerequisite to the existence of the retaliation claim." Appellant's Br. 62. Because such an argument merely restyles the same per se rule that we have previously rejected, we also reject it here.

*Waiters*, 729 F.2d at 235; *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013); *Robinson*, 107 F.3d at 1025; *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). We address both prongs of the analysis in turn.

Simko concedes that his retaliation claim fails the first prong of the exhaustion analysis. Simply put, no allegations of retaliation appeared on the face of his original EEOC charge. Simko failed to check the box indicating a claim of retaliation and his narrative contained no reference to conduct that could be construed as retaliatory. As U.S. Steel argues, "the legal theories in the original charge and amended charge are not the same, the incidents are not the same, the individuals involved are not the same, the work locations are not the same, and the time-periods are not the same." Appellee's Br. 20–21. Accordingly, Simko's retaliatory discharge claim does not fall fairly within the scope of his EEOC charge.

The central dispute in this case, however, concerns the second prong of the analysis—whether Simko's claim of retaliation falls "fairly within . . . the investigation arising" from the initial EEOC charge. *Waiters*, 729 F.2d at 237. At this step of the analysis, we consider "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz*, 541 F.2d at 398–99. Simko and the EEOC primarily argue that this prong may be satisfied simply based on the fact that the EEOC *actually did* investigate Simko's retaliatory discharge claim, albeit more than two years after he filed his initial charge.[9] To the contrary, our precedent emphasizes that the Court must look only at the scope of the EEOC investigation that would reasonably grow out of, or arise from, the initial charge filed

---

[9]    Simko pushes this argument one step further: He urges that our case-by-case analysis and precedent are not even applicable in this case because the EEOC ultimately investigated his retaliation claim and issued a right-to-sue letter based on that claim. He contends that our fact-specific exhaustion inquiry instead applies only in cases where either (1) the claim at issue was not presented to the EEOC or (2) the EEOC failed to investigate the claim. We disagree. No authority from our Court supports such a strict limitation on the exhaustion analysis.

14

with the EEOC, "irrespective of the actual content of the Commission's investigation." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (holding that "[w]hether the actual EEOC investigation uncovered any evidence of retaliation is of no consequence" in determining whether a new claim of retaliation is encompassed in the original EEOC charge). As such, we agree with the District Court's characterization of our exhaustion analysis as "objective" rather than "subjective." *Simko*, 2019 WL 6828421, at *7.

Given the fact-specific nature of the exhaustion inquiry, our precedent in this area—*Hicks*, *Waiters*, *Antol*, and *Robinson*—provides useful guidance. As these cases demonstrate, when determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge.

In *Hicks*, the plaintiff filed an EEOC charge alleging only race discrimination, but later sued asserting, *inter alia*, claims of both race discrimination and sex discrimination. 572 F.2d at 962–63. The EEOC investigated the race discrimination claim but failed to investigate sex discrimination. *Id.* Nevertheless, we held that the actual EEOC investigation did not necessarily set the "outer limit" of the scope of the civil complaint. *Id.* at 966. Such a limitation would unfairly penalize a plaintiff for an "unreasonably narrow or improperly conducted" investigation by the EEOC. *Id.* Thus, the issue was whether a reasonable investigation would include a sex discrimination claim.

We noted that certain instances of sex discrimination alleged in Hicks's civil complaint arose from the same conduct that supported his race discrimination claims and that there was evidence that the EEOC improperly failed to contact Hicks to discuss his charge after it was filed. *Id.* On those grounds, we remanded to the district court to determine "whether the . . . investigation reasonably would have included examination of the sex discrimination claims," such that those claims did not

15

need to have been exhausted by filing a separate charge. *Id.* at 966, 970.

Waiters involved an investigation of retaliatory conduct that went beyond the four corners of the EEOC charge. Waiters filed a charge with the EEOC asserting a claim of sex discrimination under Title VII against her employer, and over a year later she filed a second charge alleging that the employer retaliated against her for having submitted the earlier complaint. *Waiters*, 729 F.2d at 235. After she filed the second charge, Waiters was discharged. *Id.* at 236. Waiters did not file a new charge based on her termination. *Id.* She then brought suit in federal court alleging that she was discharged in retaliation for exercising her rights under Title VII. *Id.*

The district court concluded that Waiters should have filed another charge with the EEOC after she was discharged and dismissed Waiters's complaint for failure to exhaust administrative remedies. *Id.* We reversed. While Waiters's second EEOC charge was limited to a specific instance of retaliation, the EEOC investigation extended beyond that individual allegation and uncovered a subsequent pattern of retaliatory harassment by different officials. *Id.* at 235 n.2, 238. Although the post-charge retaliatory conduct involved different officials and episodes of misconduct that occurred over thirty months later, we held that "the core grievance—retaliation—is the same and, at all events, it is clear that the allegations of the appellant's complaint fall within the scope of the [EEOC's] investigation of the charges contained in the . . . [second EEOC] complaint." *Id.* at 238. Thus, Waiters did not need to file a separate charge regarding her new retaliatory discharge claim. *Id.*

We reached a different conclusion, on different facts, in *Antol v. Perry*. In that case, Antol filed a federal lawsuit alleging both disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and gender discrimination under Title VII for failure to hire. *Antol*, 82 F.3d at 1293. Although Antol exhausted his remedies with respect to his claim of disability discrimination, he never raised allegations of gender discrimination at any point in the administrative proceedings and the EEOC did not investigate gender discrimination. *Id.* at 1295. We concluded that "[t]he specifics of [Antol's]

16

disability discrimination charge d[id] not fairly encompass a claim for gender discrimination merely because investigation would reveal that Antol is a man and the two employees who received the positions [were] women." *Id.* at 1296. In addition, we determined that the EEOC investigation properly focused on "the gravamen of Antol's complaint—disability discrimination" and that neither the EEOC nor the employer had been put on notice of the new gender discrimination claim. *Id.* Accordingly, Antol's failure to exhaust administrative remedies for his gender discrimination claim barred that claim. *Id.*

*Robinson* is our most recent precedential opinion addressing the exhaustion of claims arising from post-charge events. There, we applied our fact-specific exhaustion inquiry to a post-charge claim of retaliatory discharge. *Robinson*, 107 F.3d at 1024. Robinson filed three EEOC charges alleging racial discrimination and retaliation against his employer, the Navy, for denying him sick leave, placing him on unauthorized leave status, and issuing him an "indebtedness letter" for taking unapproved sick leave and creating an asbestos hazard. *Id.* at 1019, 1025. After Robinson filed these charges, the Navy terminated his employment, pointing to his excessive unauthorized absences and the asbestos hazard—the subject matter of his prior charges—as the basis for his discharge. *Id.* at 1019–20. Robinson then brought suit in federal court claiming that he was discharged in retaliation for filing his three charges. *Id.* at 1020. He did not file an additional charge alleging retaliatory discharge and the EEOC did not investigate his termination. *Id.* at 1025. The district court dismissed Robinson's complaint for failure to exhaust administrative remedies. *Id.* at 1020. On appeal, we noted that the district court had failed to examine the scope of the EEOC's investigation, and—as in *Hicks*—we remanded to determine whether a reasonable investigation of Robinson's charges would have included his retaliatory discharge allegation. *Id.* at 1026.

We draw several principles from these precedents. Most importantly, the original charge is the touchstone of our exhaustion analysis. *See, e.g.*, *Antol*, 82 F.3d at 1296 (focusing on the "specifics of . . . [the] charge" in determining whether a new claim is encompassed by the charge). First, we closely

17

examine the original charge's contents to determine the reasonable scope of the EEOC investigation that would likely occur. *See Robinson*, 107 F.3d at 1024. Second, we parse the later claim and determine whether its allegations would be covered in that reasonable investigation. *See Hicks*, 572 F.2d at 966. At bottom, we must compare the two sets of allegations and evaluate whether they are sufficiently related such that a reasonable investigation of the original charge would address the subsequent, unexhausted claims. In comparing the two sets of allegations, we look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue. *See id.* at 965 (noting that some instances of sex discrimination alleged in the civil complaint "arise from the same acts which support claims for race discrimination" described in the underlying charge). Such factual overlap alone, however, does not guarantee that the new allegations are encompassed by the original charge if they do not fall within the "gravamen" of the initial charge. *See Antol*, 82 F.3d at 1296 (rejecting the male plaintiff's attempt to recharacterize his disability discrimination claim for failure-to-promote as a gender discrimination claim merely on the ground that two women secured positions over him). But even if we find no factual nexus, we may also consider whether the two sets of allegations advance the same theory of discrimination, as in *Waiters*. *See* 729 F.2d at 238.

With these principles in mind, we turn to the fact pattern presented here. Unlike in *Waiters*, the additional allegations that the EEOC investigated after it received the November 2014 correspondence were only tenuously related to the substance of the original charge. Simko's original EEOC charge was based on the Transportation Department's failure to accommodate his hearing disability and its alleged discrimination against him by its refusal to approve him for the Spellman position in August 2012.[10] By contrast, the

---

[10] As the District Court noted, the fact that Simko's original charge of disability discrimination also alleged that his "Walking Boss" made a discriminatory comment in November 2012 about his hearing impairment does not sufficiently expand the effective scope of the original charge to include his later retaliation claim. That specific allegation of disability

18

retaliation claim that Simko later filed in the District Court alleges that his discharge from the Blast Furnace Department in August 2014 was in retaliation for his filing of the original discrimination charge.

The original EEOC charge and Simko's civil complaint thus address discrete adverse employment actions that occurred approximately two years apart and involved different supervisors in different departments. Under these facts, the scope of a reasonable investigation arising out of Simko's initial charge would certainly include an inquiry into whether Simko was qualified for the Spellman position, U.S. Steel's reasons for passing him over, and identification of the person who secured the position and why he or she was chosen. While such an investigation could also inquire into whether any other adverse actions were taken against him relating to his disability or his having filed a charge, a reasonable investigation in this case would not have included an inquiry into Simko's post-charge firing. Simko's allegations of retaliation are too remote in time and substantively distinct from the allegations of disability discrimination for a reasonable EEOC investigation based on the original charge to encompass the later events.[11] And, importantly, the original charge and complaint allege

_____

discrimination is still too tenuously related in time and substance to Simko's retaliatory discharge claim.

[11] Our dissenting colleague says that retaliation charges are intrinsically related to previous charges of discrimination. We do not disagree with this as a general proposition, but the allegation that an adverse employment action occurred in retaliation for the filing of an initial EEOC charge does not necessarily mean that "a close nexus" of supporting facts, *Hicks*, 572 F.2d at 967, or a common "core grievance," *Waiters*, 729 F.2d at 238, exist. We have only held that unexhausted claims of retaliatory discharge fall within the scope of the investigation reasonably arising out of the original claim when the original claim included "the same retaliatory intent inherent in the [subsequent] retaliatory discharge claim." *Robinson*, 107 F.3d at 1026; *see also Waiters*, 729 F.2d at 238 ("[T]he core grievance—retaliation—is the same."). We will not expand that exception to the exhaustion requirement to cover such tenuously related conduct as in this case.

different types of discrimination—in one, disability discrimination and failure to accommodate and in the other, retaliation. Absent "a close nexus" of supporting facts, *Hicks*, 572 F.2d at 967, or a common "core grievance," *Waiters*, 729 F.2d at 238, we conclude that a reasonable investigation of Simko's original charge of disability discrimination would not unearth facts about his allegations of retaliation nearly two years later.

Our dissenting colleague cites the appropriate test repeatedly: If discriminatory acts occur after a plaintiff files his EEOC charge, he need not file an additional charge if the new allegations are "fairly [or reasonably] within the scope of . . . the investigation arising" out of the initial charge. *Waiters*, 729 F.2d at 237. As the dissent recognizes, in conducting this inquiry, we ask whether the new claim should "reasonably [have] be[en] expected to grow out of the [initial] charge." *Ostapowicz*, 541 F.2d at 399. However, the dissent fails to consider the facts in light of the test. As we have done in the other cases applying our exhaustion analysis, we must look at the facts as they are alleged in the charge and the civil complaint. And the facts here are unique.

What was the initial charge? Here, Simko claimed that U.S. Steel denied him a reasonable accommodation for his hearing disability and passed him over for a job because of that same disability. The initial charge included no additional instances of unlawful discriminatory treatment, other than an allegation that some other employees made "negative comments" about Simko's hearing impairment. App. 34. Unlike the plaintiff in *Hicks*, Simko did not later allege a different theory of discrimination based on some of the same underlying acts that supported his initial theory of discrimination. And unlike in *Waiters*, Simko's initial charge of discrimination was not followed by subsequent instances of the same type of unlawful treatment. As previously discussed, our exhaustion analysis is tied to the substance of Simko's only timely-filed claim in this case: that he did not receive a reasonable accommodation and was denied the Spellman job due to his disability.

The only other operative fact, namely Simko's discharge, came to light over seventeen months after he

20

submitted the initial charge, when he alerted the EEOC that he was fired in retaliation for filing the charge. But, would the allegedly retaliatory firing have been included in an investigation that could "reasonably be . . . expected to grow" out of the facts surrounding his original charge of disability discrimination, approximately two years prior? *Ostapowicz*, 541 F.2d at 399. There is no basis in fact or law for an answer in the affirmative. As we noted above, the scope of a reasonable investigation into Simko's being passed over for a job based on his disability would have involved a limited inquiry. If we were to say that his later claim of retaliation was encompassed by his—however distantly related—initial charge of disability discrimination, we would be establishing a de facto per se rule, contrary to our holdings in *Waiters*, 729 F.2d at 237 n.10, and *Robinson*, 107 F.3d at 1024.

The dissent urges that we should conclude Simko's post-charge retaliation claim was encompassed in his original charge because his retaliation claim is strongly "tethered" to his initial charge of disability discrimination and failure to accommodate. Dissent Op. 15. We reject this conclusory assertion. As relevant here, a "tether" actually exists only when the allegations in the later charge would fall within the reasonable scope of the investigation into the *allegations of the original charge*. Simko's situation fails that test. The dissent glosses over the differences between the two very different types of allegations in the initial charge and the civil complaint and instead focuses on the fact that the EEOC actually investigated and attempted to conciliate Simko's retaliation claim. Those ex-post facts do not determine the reasonable scope of an EEOC investigation.

Even if our exhaustion inquiry turned on the actual— rather than reasonable—scope of investigation arising from a charge, Simko's retaliation claim should still be dismissed. That is because the investigation in this case did not actually "aris[e]" from, *Waiters*, 729 F.2d at 237, or "grow out of," *Hicks*, 572 F.2d at 967, the underlying discrimination charge. Critically, the EEOC failed to investigate Simko's original charge, and during the approximately thirty-month delay between the filing of his original charge and the EEOC investigator's response to his November 2014 correspondence, he experienced a change in circumstances that formed the basis

of a new, distinct claim. It was due only to that extended delay and Simko's handwritten November 2014 correspondence that the EEOC learned of, and was able to investigate, Simko's new allegations while his original charge was still pending.

Thus, the EEOC investigation did not actually grow out of the original charge. Instead, the investigation arose from Simko's handwritten correspondence. After apparently taking no investigative action for over two years following its receipt of the original 2013 charge, the EEOC commenced its investigation only after an investigator read Simko's correspondence and sent Simko a letter inquiring about his case. Significantly, that letter—dated November 23, 2015, over a year after Simko's November 2014 correspondence—referenced only Simko's retaliation allegations, further demonstrating that the EEOC acted on the basis of the November 2014 correspondence, not his original charge. As we noted above, the EEOC file included a comment that an amended charge was to follow, "including retaliatory discharge." App. 83. That amended charge, however, was not timely filed.

Simko and the EEOC nevertheless urge that because the EEOC ultimately did investigate the retaliatory discharge claim, such an investigation must have been "reasonable," rendering it unnecessary to file an additional timely charge. We disagree.

As the District Court observed, this case does not involve an EEOC investigation that was unduly narrow, but rather, one that extended beyond the face of the operative EEOC charge. Contrary to Simko and the EEOC's arguments, however, we analyze claims *excluded* from an EEOC investigation in the same way that we analyze claims *included* in the investigation. Our focus remains on the investigation that can "reasonably be expected to grow out of the charge." *Ostapowicz*, 541 F.2d at 399. This principle applies equally in cases where the EEOC failed to investigate a claim, *see, e.g.*, *Robinson*, 107 F.3d at 1025; *Hicks*, 572 F.2d at 966, and cases where the EEOC broadened its investigation to cover claims not included in the charge, *see Waiters*, 729 F.2d at 238. Holding otherwise—that is, treating all investigated claims as exhausted—would create a one-way ratchet. The EEOC's

22

*choice to investigate* certain employer conduct would set the bare minimum scope of a civil complaint while its *failure to investigate* other conduct would not restrict the "outer limit" of the complaint, *Hicks*, 572 F.2d at 966. Such a rule would undermine the remedial aims of the pre-suit filing requirements by permitting a charging party to "greatly expand an investigation simply by alleging new and different facts when he was contacted by the [EEOC] following his charge." *Id.* at 967. Simko's November 2014 correspondence did just that—it introduced new allegations of retaliation based on facts distinct from those alleged in his original charge.

Simko and the EEOC's other arguments that his retaliatory discharge claim fell within the scope of a reasonable EEOC investigation are unpersuasive. They both contend that EEOC investigations are entitled to a presumption of regularity and that, in essence, we should "assume that the EEOC would not expend time or resources investigating matters unrelated to a pending charge." EEOC's Br. 24; *see also Hicks*, 572 F.2d at 966. In support of this position, they point to EEOC internal policies, reflected in the EEOC's Compliance Manual, which govern the scope of investigations and the circumstances in which the EEOC may broaden an investigation. For example, these policies direct investigators to remain alert to evidence of retaliation during their investigations, inform their supervisors in case such evidence surfaces, and notify the employer that "the scope may be expanded or limited based on information received during the investigation." EEOC Compl. Man. § 22.3, Scope of Investigation, 2006 WL 4673367; *see also* EEOC Compl. Man. § 2.8, Charges Warranting Priority Handling, 2006 WL 4672924; EEOC Compl. Man. § 13.1, Litigation for Temporary or Preliminary Relief: Introduction, 2006 WL 4673012.

In light of these practices and the presumption of investigative regularity, Simko and the EEOC urge that it was reasonable for the EEOC to broaden the investigation beyond the four corners of the original charge and that Simko's retaliation claim therefore satisfies the second prong of the exhaustion inquiry. We reject this argument on two grounds. First, a rebuttable presumption of regularity does not foreclose judicial review of the scope of EEOC investigations, as Simko argues. *See, e.g.*, *Robinson,* 107 F.3d at 1026 (remanding to

23

the district court to "evaluate the reasonableness of the decision not to investigate"); *Antol*, 82 F.3d at 1296 (holding that the investigation "quite properly" focused on Antol's disability discrimination claim). Here, the EEOC's inaction for over two years on Simko's original charge is sufficient to rebut the presumption that its subsequent investigation of Simko's charge was regular or reasonable.[12]

Second, the EEOC Compliance Manual does not persuade us that a reasonable investigation of the original charge in this case would have included the post-charge retaliation allegations. We do not question the EEOC's policy that officials prioritize retaliation claims or inquire about possible retaliation while investigating a discrimination charge. Nor do we question that the EEOC often changes the scope of investigations based on the information it gathers during the investigative process. Nevertheless, the significant

---

[12] We recognize that limited resources and the significant volume of charges filed with the EEOC each year make some amount of administrative delay inevitable. For example, in Fiscal Year 2019 alone, the EEOC received 72,675 charges of workplace discrimination. *See* Press Release, U.S. Equal Employment Opportunity Commission, *EEOC Releases Fiscal Year 2019 Enforcement and Litigation Data* (Jan. 24, 2020), https://www.eeoc.gov/newsroom/eeoc-releases-fiscal-year-2019-enforcement-and-litigation-data (last visited Mar. 26, 2021).

Nevertheless, two points of reference underscore that the EEOC's delay in this case was out of the ordinary. First, under the ADA, a charging party must permit the EEOC a minimum of 180 days to investigate and attempt to resolve his dispute, only after which he may demand a right-to-sue letter and proceed to federal court. *See Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 360–61 (1977); 42 U.S.C. § 2000e-5(f)(1). Second, according to the EEOC, the average length of an investigation is approximately ten months. *See* U.S. Equal Employment Opportunity Commission, *What You Can Expect After You File a Charge*, https://www.eeoc.gov/what-you-can-expect-after-you-file-charge (last visited Mar. 26, 2021).

In this case, the agency's delay in initiating its investigation alone far exceeded both of these time periods.

differences between Simko's original charge of disability discrimination and his later claim of retaliatory discharge foreclose the possibility that a reasonable investigation would have reached his post-charge claim, even in light of the EEOC's own practices.[13]

Relatedly, we do not give more weight to these arguments about exhaustion merely because the EEOC itself has taken the position that a reasonable investigation would have encompassed Simko's retaliation claim. Courts refuse to defer to the EEOC's litigation position when, as here, it is "not embodied in any formal issuance from the agency, such as a regulation, guideline, policy statement or administrative adjudication." *Gregory v. Ashcroft*, 501 U.S. 452, 485 n.3 (1991) (White, J., concurring); *see also Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's . . . litigating position would be entirely inappropriate."). Specifically, when a district court considers whether a plaintiff has exhausted his administrative remedies, "[n]o deference may be accorded the EEOC or the complaint investigator's finding with respect to the plaintiff's compliance." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105–06 (10th Cir. 2002). Accordingly, we do not defer to the EEOC on the question of administrative exhaustion.

Simko and the EEOC further assert that filing an additional EEOC charge was not necessary in this case because the purpose of the ADA statutory scheme was ultimately fulfilled: namely, the facilitation of an informal dispute resolution process between Simko and U.S. Steel. This argument, however, ignores two other fundamental aims of the exhaustion requirement: prompt notice to the employer and swift dispute resolution. *See, e.g.*, *Morgan*, 536 U.S. at 109 ("[B]y choosing what are obviously quite short deadlines,

---

[13]   The dissent characterizes what occurred after the EEOC received the November 14 correspondence as the agency "expanding" its investigation into Simko's initial charge. Dissent Op. 12. The EEOC did no such thing. There never was a disability discrimination investigation in the first place. Instead, the EEOC embarked on a discrete investigation into retaliation based on the handwritten letter.

Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." (internal quotation marks omitted)); 42 U.S.C. § 2000e-5(b), (e)(1) (requiring that the EEOC serve notice on the employer against whom the charge is made within 10 days of the filing of the charge). In addition to advancing those goals, the Supreme Court has emphasized that "strict adherence" to the ADA's procedural requirements "is the best guarantee of evenhanded administration of the law." *Morgan*, 536 U.S. at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

While the EEOC did ultimately investigate and attempt pre-complaint conciliation between Simko and U.S. Steel, this process was significantly delayed. Critically, U.S. Steel did not receive any notice of Simko's retaliation claim until well after the end of the 300-day filing period. The parties agree that U.S. Steel was informally notified of Simko's retaliation allegations no earlier than November 23, 2015—the day of the EEOC investigator's note to Simko's file—and no later than December 18, 2015—the day of the investigator's letter to Simko's counsel stating that he had informed U.S. Steel about the amended charge to be filed. This means that U.S. Steel did not receive even informal notice of the retaliatory discharge claim until some point between 161 days and 186 days after the filing period expired. Moreover, U.S. Steel was not formally put on notice of the retaliatory discharge claim until after Simko's counsel filed his amended EEOC charge on January 22, 2016, 221 days after the end of the filing period. Given this timeline, excusing the exhaustion requirement for Simko's retaliation claim would undercut the Supreme Court's emphasis on "strict adherence" to the pre-suit requirements and the statutory scheme's aims of notice and prompt dispute adjudication. *See Morgan*, 536 U.S. at 108–09.

We thus conclude that Simko's subsequent retaliation claim would not have fallen within the reasonable scope of an EEOC investigation into his original discrimination charge. Accordingly, his retaliation claim fails the second prong of the exhaustion inquiry.

While it is unfortunate that Simko did not timely amend his initial charge on his own and that the EEOC did not promptly react to his November 2014 correspondence, we

cannot hold that the later claim is encompassed within the initial charge because Simko's retaliatory discharge claim does not fairly, or reasonably, fall within the scope of his original charge or an EEOC investigation that would arise therefrom. Thus, he needed to file an amended charge advancing that claim within the ADA's 300-day filing period. Because he failed to do so, the District Court correctly dismissed his complaint for failure to exhaust administrative remedies.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of Simko's complaint.

McKEE, <u>Circuit Judge</u>, concurring in part and dissenting in part.

A petitioner need not file a new formal charge with the Equal Employment Opportunity Commission if that charge is "within the scope of a prior EEOC complaint or the investigation which arose out of it."[1] I must respectfully dissent from the Majority opinion because the EEOC investigation of Simko's retaliation claim was reasonably within the scope of the investigation arising out of Simko's initial disability discrimination claim. Thus, Simko's retaliation claim related back to his earlier timely disability discrimination claim and the District Court erred in dismissing Simko's retaliation claim for failure to exhaust his administrative remedies.[2]

I.

In Pennsylvania, "a complainant has 300 days from the date of the adverse employment decision to file a claim with the [EEOC]."[3] "The purpose of [the filing requirement] . . . is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court."[4]

---

[1] *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1984).

[2] I agree with my colleagues' decision to dismiss the first two claims raised by Simko and the EEOC. Simko's strongest argument would have been that his November 2014 letter to the EEOC should have been construed as a formal EEOC charge of retaliation. However, that argument has been forfeited because Simko did not raise it before the District Court. *See* Maj. Op. at 8–10. I agree with my colleagues that the District Court's cursory, *sua sponte* consideration of the issue—which simply noted that the letter did not constitute a charge and that Simko did not argue otherwise—is insufficient to preserve the issue. *Id*. at 9–10. We also cannot reach the EEOC's claim that the court should have equitably tolled the charge-filing period during the time after Simko sent his November 2014 letter to the EEOC because the claim was not included in Simko's notice of appeal. *See id.* at 10.

[3] *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852 (3d Cir. 2000).

[4] *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

1

If, after a petitioner files a claim, subsequent discriminatory acts occur, the petitioner does not need to file a new formal charge with the EEOC so long as the new allegations "fall[ ] within the scope of a prior EEOC complaint *or the investigation which arose out of it*."[5] This "includ[es] new acts which occurred during the pendency of proceedings before the Commission."[6] This is quite reasonable because "additional charges filed during the pendency of the administrative proceedings may fairly be considered explanations of the original charge and growing out of it."[7]

Moreover, we liberally construe the scope of an EEOC complaint when considering whether a subsequent claim falls within the ambit of an earlier claim: "In determining the content of the original complaint for purposes of applying [relation back], we keep in mind that charges are most often drafted by one who is not well versed in the art of legal description. Accordingly, the scope of the original charge should be liberally construed."[8] Indeed, that is precisely the situation here. The letter that led to the EEOC's eventual investigation was handwritten by Simko, a lay plaintiff with no legal training or experience. We have also previously concluded that where the petitioner "*attempted* to amend his [EEOC] charge,"[9] but failed to do so, he could still bring a civil action based on the charge that he attempted to include. Even

---

[5] *Waiters*, 729 F.2d at 235 (emphasis added); *see also id.* ("Since we conclude that appellant's current claim falls within the scope of the prior investigation, and that appellant would be entitled to sue on the complaint that led to that investigation, appellant was free to bring this suit without further exhausting her administrative remedies.").

[6] *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976). *See also Robinson v. Dalton*, 107 F.3d 1018, 1025 (3d Cir. 1997) (describing that even where an investigation was "broadened by the EEOC" and included "events that occurred after the filing of the informal complaint," we concluded "there was nothing to be served by requiring [claimant] to file a second complaint").

[7] *Ostapowicz*, 541 F.2d at 399.

[8] *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978).

[9] *Id.* at 964.

2

a failed attempt to amend a charge "create[d] an excuse for the failure to file a[n amended] charge."[10]

We have established two factors to determine if a claim of discrimination relates back to a prior claim. We look to see whether the subsequent claim "(1) falls within the scope of a prior EEOC complaint, or (2) falls within the scope of the EEOC 'investigation which arose out of it.'"[11] The first inquiry is determined by the face of the complaint itself. To resolve the second inquiry, we look at the content and results of the EEOC investigation to determine if the new claim should "reasonably [have] be[en] expected to grow out of the [initial] charge."[12]

Here, Simko timely filed a disability discrimination claim against U.S. Steel.[13] While that claim was pending before the EEOC, he was fired.[14] He subsequently wrote to the EEOC detailing his belief that he was fired in retaliation for filing his initial discrimination claim. He wrote, "I believe anyone who familiarizes themself [sic] with the details of the case will clearly see it as retaliation for filing charges with the EEOC."[15] The EEOC then expanded the disability discrimination investigation to include retaliation.[16] The EEOC notified U.S.

---

[10] *Id.*

[11] *Robinson*, 107 F.3d at 1025 (citing *Waiters*, 729 F.2d at 235).

[12] *Ostapowicz*, 541 F.2d at 399. Some claims that were not presented to the EEOC at all may still proceed in District Court because we have held that the actual EEOC investigation does not necessarily "set[] the outer limit to the scope of the civil complaint." *Hicks*, 572 F.2d at 966. We have allowed some of these unexhausted claims to proceed so as not to punish the claimant for a failure of the EEOC. We have concluded that "[i]f the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from his statutory right to a civil action." *Id.*

[13] App. 33.

[14] App. 25.

[15] App. 80–81.

[16] App. 84.

Steel, investigated the claim, found evidence of retaliation, and attempted to conciliate the claim.[17]

Simko concedes that his initial complaint alleged only disability discrimination and did not include a charge of retaliation.[18] Accordingly, we must determine whether the retaliation claim could "reasonably [have] be[en] expected to grow out of the [initial disability discrimination] charge."[19] As I explain below, a number of factors govern that reasonableness inquiry. These include the normal course of EEOC investigations, whether the petitioner attempted to amend the claim to include the additional charge, and whether the claim was actually investigated.

My colleagues' analysis of the reasonableness of the scope of the EEOC's investigation is guided by four cases: *Hicks*, *Waiters*, *Antol*, and *Robinson*.[20] In each of these cases, we considered whether claims that petitioners brought for the first time before the District Court (and that had not been filed with the EEOC) could relate back to earlier discrimination claims that each petitioner had properly filed with the EEOC. Each petitioner in those cases claimed that the new charge s/he filed related back to the earlier-filed charge. Below, I discuss some the principles that we can take from these cases. While these cases are instructive, I realize that none of them addressed the issue before us now—whether an EEOC investigation was *too broad* and thus unreasonable such that an actually investigated claim should be prevented from proceeding in District Court. I do not believe that the facts here justify concluding that the EEOC's investigation was unreasonably broad.

Indeed, we have cautioned that, in conducting an inquiry into reasonableness, "[t]he individual employee should not be penalized by the improper conduct of the

---

[17] App. 106; App. 112–17.

[18] This, however, of course is true with any charge alleging retaliation for filing a substantive discrimination charge because the discrimination charge must predate the retaliation.

[19] *Ostapowicz*, 541 F.2d at 399.

[20] *See* Maj. Op. at 15–18.

4

Commission."[21] We have also reaffirmed the "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits."[22] In short, errors by the EEOC should not affect a claimant's ability to pursue his or her claim.

## II.

The petitioner in *Hicks* brought a claim before the District Court alleging race and sex discrimination even though he had only filed a race discrimination charge with the EEOC. The District Court concluded that it did not have "jurisdiction over Hicks's claims of sex discrimination because a charge of such discrimination had not been filed with the EEOC."[23] We reversed. We held that Hicks' failure to formally file a sex discrimination charge with the EEOC did not "preclude[] jurisdiction over the sex discrimination claims."[24] That holding was based upon two considerations. First, there was evidence that Hicks "reasonably attempted to amend his charge to include sex discrimination" but the EEOC erred in failing to amend the claim.[25] This, we found, "create[d] an excuse for the failure to file a sex discrimination charge"[26] regardless of whether Hicks attempted to amend the charge within the statutory filing period.[27]

Second, we concluded that there was a genuine issue of material fact as to whether a properly conducted EEOC investigation would have included an inquiry into sex

---

[21] *Hicks*, 572 F.2d at 964–65.

[22] *Seredinski v. Clifton Precision Prods. Co.*, 776 F.2d 56, 65 (3d Cir. 1985) (quoting *Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358–59 (3d Cir. 1984)).

[23] *Hicks*, 572 F.2d at 963.

[24] *Id.* at 964.

[25] *Id*.

[26] *Id*.

[27] *Id*. ("The record does not indicate whether the attempt to incorporate sex discrimination in the EEOC charge was made within the required 180-day statutory period. Our resolution of the amendment issue in this case does not depend on whether the amendment would have been filed within that time period.").

discrimination. Hicks alleged that he was not contacted by the investigator until the conclusion of the investigation.[28] There was "sufficient evidence to raise a fair inference that Hicks would have told the EEOC investigator that he believed that sex discrimination was a cause of the disparate treatment alleged in his charge" had he been contacted earlier.[29]

We concluded that if, on remand, the District Court found either that (1) "the EEOC improperly failed to accept an amendment to Hicks's charge which would have incorporated sex discrimination" or (2) "a reasonable investigation of the charge as filed would have encompassed the sex discrimination claims" we would have jurisdiction over the sex discrimination claim.[30]

As part of the inquiry into whether "the sex discrimination claims [] would have been uncovered" we noted that "there [wa]s a close nexus between the facts supporting the claims of race and sex discrimination,"[31] which increased the likelihood that they would have been uncovered. We also noted that "evidence of the investigatory practices of the agency" would help us "conclude whether a reasonable inquiry would have reached Hicks's allegations."[32]

The petitioner in *Waiters* filed a sex discrimination claim with the EEOC alleging that she had been passed over for a position in favor of a male applicant.[33] One year later, she filed a second claim with the EEOC alleging that her employer had retaliated against her for filing that claim a year earlier.[34] The EEOC investigated the claim and found that there was support for Waiters' allegations, but then the investigation was

---

[28] *Id*. at 966.

[29] *Id*.

[30] *Id.* at 967.

[31] *Id.*

[32] *Id*. In *Hicks* we noted that we did not have such evidence before us, so we could not consider whether the EEOC's investigatory practices supported an assertion of jurisdiction over the unexhausted claim. *Id*. Fortunately, as my colleagues note, we have the benefit of the EEOC's guidance here.

[33] *Waiters*, 729 F.2d at 235.

[34] *Id*.

dropped: "no further action was taken by the EEOC, [the] claim was never finally adjudicated by the agency, and no right to sue letter ever issued."[35] Waiters continued to work at the same employer, but in a different department on a different program. Approximately two years later, while working on the new program, she was fired.[36] Her employer alleged misconduct unrelated to the conduct that her prior retaliation claim was based upon.[37] Rather than filing another retaliation claim with the EEOC, she sued in District Court alleging that she had been fired in retaliation for filing her discrimination claims with the EEOC.[38]

The District Court dismissed her action based on her failure to file a second retaliation charge with the EEOC specifically related to her discharge. We again reversed. We held that she need not have filed another retaliation claim even though years had passed since her prior claim and "the allegedly discriminatory officials and acts [in her prior claim we]re different" than the officials and acts that were the subject of her retaliation claim filed in the District Court.[39] We held that even though the actors, acts, and departments were different, "[w]here discriminatory actions continue[d] after the filing of an EEOC complaint . . . the purposes of the statutory scheme [we]re not furthered by requiring the victim to file additional EEOC complaints."[40] Our reasoning rested upon two considerations. The "core grievance—retaliation—[wa]s the same" between Waiters' new and prior charges. And "it [wa]s clear that the allegations of the appellant's complaint f[e]ll within the scope of the [EEOC's] investigation of the charges."[41] In other words, we found it relevant that the EEOC had already actually investigated retaliation against Waiters.

The Majority focuses on two aspects of our decisions in *Hicks* and *Waiters*—the "close factual nexus" in *Hicks*, and the similarity of the substantive discrimination charges in

---

[35] *Id.*
[36] *Id.* at 236.
[37] *Id.*
[38] *Id.*
[39] *Id.* at 238.
[40] *Id.* at 237.
[41] *Id.* at 238.

*Waiters*—and concludes that one or both of these factors must be present in order for a subsequently filed claim to relate back.[42] But, as I discuss below, neither opinion made either factor a prerequisite, and in so concluding, the Majority ignores other considerations that we found relevant to the relation back analysis in those decisions.

Several principles, in addition to those discussed by the Majority, emerge from *Hicks* and *Waiters*. First, there are multiple ways in which a petitioner can demonstrate that an unexhausted claim is reasonably within the scope of an earlier-filed claim. As my colleagues recognize, a subsequent claim of discrimination or retaliation may reasonably relate back to an earlier-filed charge of discrimination if the filed and unfiled claims share a close factual nexus. But *Hicks* also establishes that "evidence of the investigatory practices of the agency" are relevant to our reasonableness determination.[43] Stated another way, evidence from the agency itself, such as EEOC guidance showing that a properly conducted EEOC investigation would or should have reached the unexhausted claim, can help a petitioner establish that the unexhausted claim relates back to a properly filed claim.

In addition, as my colleagues note, we consider whether a prior and subsequent claim of discrimination share the same core grievance in determining if a subsequent claim relates back to the prior claim. But we also look to see whether the EEOC actually investigated the unexhausted claim. The fact that the EEOC's investigation of the charges include the substance of the unexhausted claim helps to establish that the claim reasonably fell within the scope of the prior complaint.[44] Finally, if a petitioner attempts to amend a charge and the EEOC erroneously fails to recognize the amendment, a petitioner may be excused from filing a new charge with the

---

[42] *See* Maj. Op. at 20.

[43] *Hicks*, 572 F.2d at 967.

[44] *Waiters*, 729 F.2d at 238 (concluding that the unexhausted claim was within the scope of the previous complaint in part because "it [wa]s clear that the allegations of the [District Court] complaint f[e]ll within the scope of the [EEOC's] investigation of the charges").

EEOC before bringing his or her claim before the District Court.[45]

Our holding today is inconsistent with our approach in *Hicks* and *Waiters.* Moreover, my colleagues overlook that we have not previously held that a claim that was actually investigated by the EEOC was not reasonably within the scope of the initial charge that gave rise to the investigation. Although I agree that we can review the reasonableness of a completed EEOC investigation, I do not think my colleagues give sufficient weight to the fact that the EEOC actually investigated and attempted to conciliate Simko's retaliation claim in determining the reasonableness of that investigation. Given our analysis in *Hicks* and *Waiters*, I am persuaded that the investigation here was reasonable and the investigation's scope should not be viewed as unreasonable merely because of the delay that occurred.[46]

### III.

Because "the EEOC has considerable expertise in the area of employment discrimination,"[47] I am not as willing as

---

[45] *Hicks*, 572 F.2d at 967.

[46] In other cases, we have emphasized the importance of the EEOC actually having investigated the claim at issue. For example, in *Ostapowicsz*, we found vital that "conciliation discussions and proposals . . . between the Commission and the employer" included the new charge that was at issue there. 541 F.2d at 399. We noted that had the new charge at issue not been included in the investigation and conciliation efforts, "there would be some force to the defendant's contention that Ostapowicz could not bring herself within the scope of the EEOC charge." *Id*. But because the new charge was included in the conciliation efforts, we allowed it to proceed. Similarly, in *Waiters*, we found it persuasive that "the allegations of the [] complaint f[e]ll within the scope of the [EEOC's] investigation of the charges." 729 F.2d at 238.

[47] *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005); *see also, e.g.*, *Butler v. West*, 164 F.3d 634, 642 (D.C. Cir. 1999) (The EEOC has "a measure of expertise and familiarity with employment discrimination disputes that federal judges cannot readily match."); *Muller Optical Co. v. EEOC,* 743 F.2d 380, 395 (6th Cir. 1984) ("[T]he EEOC

my colleagues to brush aside the EEOC's own conclusion that it was reasonable to include the subsequent acts of retaliation in its investigation.

This is particularly true when we consider that we liberally construe claims for the purpose of relation back.[48] In addition, "[c]ourts have generally determined that the parameters of the civil action in the District Court are defined by the scope of the EEOC investigation . . . including new acts which occurred during the pendency of proceedings before the Commission."[49] It is also important to recall that we "presume the regularity of the EEOC's investigation."[50] We should not lightly conclude that the EEOC's commitment of resources and time to an investigation into discrimination was unreasonable.

Accordingly, since the EEOC actually investigated Simko's retaliation claim, we must begin with the presumption that the investigation was reasonable. And because "evidence of the investigatory practices of the agency" are relevant to determining "whether a reasonable inquiry would have reached [any additional] allegations,"[51] we must also consider the EEOC's general practices. These practices offer further support for the reasonableness of the investigation here.

As the Majority recognizes, EEOC investigators are told to look for "evidence of retaliation during their investigations, inform their supervisors in case such evidence surfaces, and notify the employer that 'the scope may be expanded or limited based on information received during the investigation.'"[52] Indeed, the EEOC Manual states that "if it is

---

has developed considerable expertise in the field of employment discrimination since Congress created it by the Civil Rights Act of 1964."); *Maskin v. Chromalloy Am. Corp.*, 1986 WL 4481, at *13 (E.D. Pa. Apr. 14, 1986) ("The EEOC has special expertise in investigating charges of discrimination, and its expertise should not be ignored.").

[48] *Hicks*, 572 F.2d at 965.

[49] *Ostapowicz*, 541 F.2d at 399–400.

[50] *Hicks*, 572 F.2d at 966.

[51] *Id*. at 967.

[52] Maj. Op. at 23 (citing EEOC Compl. Man. § 22.3, Scope of Investigation).

10

found during the investigation that the charging party has been discriminated against because s/he filed the charge, [the] EEOC may investigate the retaliation issue *based on the original charge*."[53] Yet, my colleagues dismiss the importance of this statement in the Manual by focusing on the differences in the initial allegations of discrimination and the subsequent allegations of retaliation.[54]

I submit, however, that the EEOC's policy is eminently reasonable because even a minimally well-informed employer in today's marketplace knows better than to admit that an employee was terminated in retaliation for filing a claim of discrimination. As we explained in *Aman v. Cort Furniture Rental Corp.*,[55] "[d]efendants of even minimal sophistication will neither admit discriminatory animus or [sic] leave a paper trail demonstrating it."[56] All we need do is substitute "retaliatory animus" for "discriminatory animus" to appreciate the reasonableness of the EEOC's policy and the scope of its investigation.

Neither party disputes that Simko's initial disability discrimination charge in May 2013 was timely. While it was still pending before the EEOC, U.S. Steel fired Simko allegedly for unrelated reasons.[57] In November 2014, a few months after being fired, while the disability discrimination charge was still pending before the EEOC, Simko wrote to the EEOC stating his belief that he was fired "as retaliation for filing charges with the EEOC."[58] Simko's timely filed initial

---

[53] *See* EEOCCM, § 2.8 Charges Warranting Priority Handling, 2006 WL 4672924 (emphasis added).

[54] *See* Maj. Op. at 24–25.

[55] 85 F.3d 1074 (3d Cir. 1996).

[56] *Id.* at 1082 (quoting *Riordan v Kempiners*, 831 F.2d 690, 697 (7th Cir. 1987)) (internal quotation marks omitted).

[57] The mere fact that U.S. Steel claimed Simko was fired for job performance is of little import for the reasons articulated in *Cort Furniture, supra*.

[58] App. 80–81. As noted above, I agree with my colleagues that Simko's argument that the November 2014 correspondence should have been construed as a charge was forfeited because counsel failed to raise it below. *See* Maj. Op. at 8–10. But, the procedural default aside, as the EEOC

11

disability discrimination claim, therefore, is the alleged basis of the retaliation claim. It is difficult to see how the retaliation claim cannot be said to have, at least in part, grown out of the original charge. Absent the initial charge of discrimination, there would be no basis for the retaliation.

As is regular practice at the EEOC, and as is explicitly contemplated by the EEOC guidance, an EEOC investigator wrote back to Simko and contacted U.S. Steel in November 2015 to inform U.S. Steel that it was expanding its investigation into retaliation and that a formal retaliation charge was forthcoming.[59] The EEOC investigated the retaliation claim on-site at U.S. Steel in September 2018.[60] And in February 2019, the EEOC determined that there was reasonable cause to believe U.S. Steel had retaliated against Simko.[61]

Having actually investigated and attempted to conciliate the retaliation claim, the EEOC fulfilled the purpose of the exhaustion requirement. We have previously stated that the "purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute."[62] That happened here. U.S. Steel was a part of the EEOC's investigation of the retaliation claim, including when the EEOC made a site visit.[63] U.S. Steel therefore was on notice of the investigation, invited to conciliate, and understood that it was facing a retaliation charge before Simko brought suit in District Court.

All of these factors demonstrate the reasonableness of the investigation here and would do so even absent the presumption of reasonableness which attaches that

---

itself recognizes, the agency very likely erred in failing to construe the correspondence as a formal charge.

[59] App. 83.

[60] App. 106.

[61] A112–14.

[62] Maj. Op. at 11 (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999)).

[63] App. 106.

investigation.[64] Accordingly, "there [is] nothing to be served by requiring [Simko] to [have] file[d] a second complaint"[65] other than allowing U.S. Steel to escape any liability for conduct that Simko may be able to prove is illegal. Doing so undermines the statutory purpose and regulatory scheme of the EEOC. Because Simko's "current claim falls within the scope of the prior investigation, and [he] would be entitled to sue on the complaint that led to that investigation, [Simko] was free to bring this suit without further exhausting h[is] administrative remedies."[66]

## IV.

The Majority concludes that despite the fact that the EEOC actually investigated and attempted to conciliate the claim, it does not relate back to the initial disability charge because it referenced events that were discrete and remote from the events referenced in the initial charge.[67] But we have previously rejected similar arguments and concluded that claims may relate back even where they are based on discrete events, occurring years apart.

In *Waiters*, 30 months elapsed between the initial charge and the adverse employment action, but we concluded that the claims related back. Just as U.S. Steel and the Majority argue here, the defendant there argued that the original charge and the retaliation claim were very different—"different officials are alleged to be responsible for the allegedly discriminatory acts, more than thirty months passed between the formal complaint and the discharge, and the alleged retaliatory acts are of a different nature."[68] The defendant therefore argued that this "preclude[d] us from holding that the claim based on the discharge is within the scope of the investigation that arose from the formal complaint."[69] We disagreed. We allowed the claim to proceed because "it [wa]s

---

[64] *Hicks*, 572 F.2d at 966 ("[C]ourts should presume the regularity of the EEOC's investigation.").

[65] *Robinson*, 107 F.3d at 1024–25.

[66] *Waiters*, 729 F.2d at 235.

[67] *See* Maj. Op. at 18–20.

[68] *Waiters*, 729 F.2d at 238.

[69] *Id.*

13

clear that the allegations of the appellant's complaint fall within the scope of the district director's *investigation of the charges*."[70] This was true even where "[t]he investigation clearly went beyond the specific problem alleged in the formal complaint."[71] So too here. Through no fault of Simko, the EEOC delayed investigating his claims—and, to its substantial credit, the EEOC concedes its error in delaying the investigation of Simko's claim. Nevertheless, the retaliation claim was eventually part of the agency's investigation and U.S. Steel participated in the investigation and conciliation process.

The Majority also argues that the claims cannot relate back because disability discrimination is substantively different from retaliation. But we have previously concluded that claims that differ in kind may also relate back so long as they reasonably would have been included in the investigation of the initial charge. As described above, in *Hicks* we concluded that a charge of sex discrimination could relate back to a charge of race discrimination because, had the EEOC properly investigated the claim, the petitioner would have put the EEOC on notice of sex discrimination as well.[72] Simko's claims are connected with a much stronger tether than those in *Hicks*. Simko did communicate with the EEOC and put the agency on notice of the retaliation claim—a claim that was actually investigated. And although the court in *Hicks* noted that part of the reason it concluded the claims could relate back was because both the sex and race discrimination claims arose out of the same set of facts, here there is more to support the reasonableness of the investigation than was present in *Hicks*. Simko's retaliation claim was actually investigated by the EEOC; moreover, the EEOC guidance instructs that investigations into retaliation arising out of discrimination claims are a normal part of the process and relate back to the initial charge of discrimination; and finally, the contemplated administrative process was fulfilled when Simko and U.S.

---

[70] *Id.* (emphasis added).

[71] *Id. See also Ostapowicz*, 541 F.2d at 399 ("The additional charges filed during the pendency of the administrative proceedings may fairly be considered explanations of the original charge and growing out of it.").

[72] *Hicks*, 572 F.2d at 962.

Steel were involved in the investigation and conciliation process. As noted, "[t]he purpose of the filing requirement is to initiate the statutory scheme for remedying discrimination. . . . Thus, the effect of the filing requirement is essentially to permit the EEOC to use informal, non-judicial means of reconciling the differences between the charging party and an employer."[73]

Additionally, as I have argued above, we must not lose sight of the fact that claims of retaliation are intrinsically tethered to claims of discrimination; they rarely arise in a vacuum or in an environment devoid of claims of discrimination. Indeed, this is precisely why the EEOC's policy of allowing investigations into substantive discrimination to include allegations of retaliation is so eminently reasonable. In fact, a contrary policy that would preclude or discourage inquiries into whether an employee alleging discrimination had suffered retaliation would be unreasonable.

The Majority argues that considering the facts of Simko's disability discrimination claim in light of the appropriate test demonstrates that any tether it has to the retaliation claim is "conclusory" and does not "actually exist[]."[74] But in so arguing, my colleagues appear to ignore the clear connection between the two claims. Simko's allegation that he was fired in retaliation for filing a disability discrimination claim means that his disability discrimination claim is both a factual and legal basis for his retaliation claim. Stated differently, his claim alleges that but for his filing of a disability discrimination claim, he would not have faced the allegedly retaliatory discharge. Such a connection between the claims is hardly "conclusory."[75] As I explain below, I agree

---

[73] *Id.* at 963 (citing *Ostapowicz*, 541 F.2d at 398.)

[74] Maj. Op. at 21.

[75] Curiously, on the one hand, the Majority agrees with the "general proposition" that "retaliation charges are intrinsically related to previous charges of discrimination," Maj. Op. at 19 n.11, and it notes that a reasonable "investigation could [] inquire into whether any other adverse actions were taken against [Simko] relating to his disability *or his having filed a charge*," *id*. at 19 (emphasis added), but, in

15

with the Majority that, due to our prior rejection of a *per se* rule which would have made all retaliation claims automatically relate back to the earlier claim upon which they were based,[76] a petitioner must show more than the simple fact that he or she filed a subsequent retaliation claim in order to be excused from having to file a second formal charge with the EEOC. But Simko has shown much more than that here.

Concluding that Simko's retaliation claim relates back here would not run afoul of our prior rejection of such a *per se* rule. It is not true that all such cases will evidence the apparent nexus between a prior discriminatory act and a subsequent discharge that appears here. Here it is not simply the fact that Simko alleged retaliation before the District Court that causes his claim to relate back. He attempted to amend his claim to include retaliation; he put the EEOC on notice that he suspected retaliation was the reason for his firing; and, of course, the EEOC actually investigated the retaliation claim, issued a right to sue letter, and attempted to conciliate the claim. All of these are factors which we have previously concluded support the reasonableness of allowing an unexhausted claim to proceed.[77] The fact that Simko is alleging

the same sentence, concludes that "a reasonable investigation in this case would not have included an inquiry into Simko's post-charge firing." *Id*. But if a reasonable inquiry could inquire into "[Simko] having filed a charge," and Simko alleges that his having filed a charge is what caused his firing, then a reasonable inquiry would necessarily include "an inquiry into his post-charge firing." That is what our precedent says. *See*, *e.g*., *Ostapowicz*, 541 F.2d at 398-99 (Reasonable investigations may "includ[e] new acts which occurred during the pendency of proceedings before the Commission."). And that is what the EEOC concluded when it investigated the post-charge firing and found that Simko was likely retaliated against.

[76] *See* Maj. Op. at 13, 21 (citing *Robinson*, 107 F.3d at 1024, and *Waiters*, 729 F.2d at 237 n.10).

[77] Indeed, as the following two examples demonstrate, there are other reasons why allowing Simko's claim to relate back here would not create a *per se* rule. For example, consider the situation of a petitioner who files a timely race discrimination claim with the EEOC, but later brings a retaliation claim

a retaliation claim (as opposed to another type of discrimination claim) before the District Court only provides one added benefit—because EEOC investigators are specifically instructed to be alert to retaliation claims, the fact that he alleges retaliation makes it more reasonable to conclude that the investigation the agency conducted into the retaliation was proper. But, of course, not every litigant claiming

before the District Court that was not brought before the EEOC. If, prior to filing in District Court, the petitioner (i) made no attempt to amend her claim to include retaliation; (ii) did not notify the EEOC that she suspected she was retaliated against for filing the race discrimination claim; and (iii) the EEOC did not actually investigate retaliation; the only tie to the prior race discrimination claim would be the fact that the new claim before the District Court was a retaliation claim. Although, as described above, there is some inherent connection between a retaliation claim and the substantive discrimination claim on which it is based, consonant with our rejection of a *per se* rule, this, on its own, would not be sufficient to show that the claim was "within the scope of a prior EEOC complaint or the investigation which arose out of it," *Waiters*, 729 F.2d at 235, and therefore, petitioner's claim would fail.

Additionally, consider the situation in which an employee alleges that she was retaliated against for supporting her colleague's disability discrimination claim. This retaliation claim would not relate back to, for example, a prior sex discrimination claim that the employee herself filed. It would not relate back because the retaliation claim would not have "grown out of the subject matter" of her earlier sex discrimination claim. That retaliation claim would not depend at all on the employee having first filed her sex discrimination claim. Rather, the basis from which this retaliation claim flowed would have been her support of her colleague's disability discrimination claim. By contrast, here, because the retaliation is based on Simko's own filing of a disability discrimination claim in his case, it does arise, at least in part, out of the subject matter of the initial charge. This, coupled with Simko's case specific circumstances outlined above, is enough to show that the retaliation claim is properly within the scope of the investigation of Simko's initial charge.

17

retaliation will be able to point to all of these additional factors in support.[78]

Nevertheless, my colleagues press even further in rejecting the argument raised by Simko and joined by the EEOC that the retaliation claims relate back. My colleagues conclude that "[e]ven if our exhaustion inquiry turned on the actual—rather than reasonable—scope of investigation arising from a charge, Simko's retaliation claim should still be dismissed[.]"[79] They argue that result must follow because the investigation did not actually arise from the disability discrimination charge. Rather, my colleagues conclude that the investigation arose from Simko's November 2014 letter to the EEOC.[80] However, based on our precedent and the actual workings of EEOC investigations, that is a distinction without difference. I have already explained that EEOC investigators are instructed to look for retaliation in their investigations of substantive discrimination claims and also explained why that is so very reasonable. Communication with the petitioner during the course of the investigation is a routine and necessary part of such investigations. In fact, we held that the EEOC erred when it failed to communicate with the petitioner during the investigation in *Hicks*.[81] We concluded that had the investigation been reasonable and proper, the EEOC would have communicated with Hicks, and that it was likely that communication would have put the EEOC on notice of his additional claim of sex discrimination.[82] That is exactly what occurred here.

During the course of the EEOC's investigation of the discrimination claim, Simko put the EEOC on notice of an additional claim of retaliation that arose after he filed, and as a

---

[78] Nor, however, are all of these additional factors necessarily required. As we held in rejecting the per se rule in *Robinson*, we must "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis" to determine whether the unexhausted claim is reasonably within the scope of the prior complaint. 107 F.3d at 1024.

[79] Maj. Op. at 21.

[80] *Id.*

[81] *Hicks*, 572 F.2d at 966.

[82] *Id.*

result of, his initial claim. Such communication is not only contemplated by our caselaw; it is encouraged by it and it *is required* by the EEOC's guidance. Thus, I fail to see how it was unreasonable for the EEOC to inquire into any acts of retaliation. Indeed, the EEOC would have been derelict if it had not done so. The very fact that the investigation arose from Simko's November 2014 letter is actually evidence of its reasonableness. I do not think we can so easily dismiss the EEOC's assessment of what is a reasonable investigation in such cases.

The Majority next takes issue with the length of time that the investigation took. And while the EEOC has commendably and forthrightly admitted that the prolonged delay was a mistake, that should not defeat Simko's claim; he did not cause the delay. I do not dispute my colleagues' claim that the length of time that the investigation took is out of the ordinary.[83] However, there is nothing in the statute or precedent that allows us to find that unreasonably delaying an investigation is sufficient to overturn our presumption that the investigation that was conducted was reasonable. In fact, if anything, our caselaw points to the opposite conclusion. We have consistently maintained that where the EEOC errs, we do not to allow the errors to adversely impact a claim. For example, in *Hicks* we noted, "[t]he failure of the EEOC to accept [an] amendment is . . . [a] failure of the agency to follow the statute and its own regulations," but we concluded that "[t]he individual employee should not be penalized by the improper conduct of the Commission."[84] I cannot understand why we now penalize Simko for the agency's laxity.

And we have concluded that much more egregious failures by the EEOC than simple delay do not preclude a petitioner's suit. For example, "failure of the EEOC to give notice of a charge to the employer involved or its failure to attempt reconciliation, both of which are *required* by section 706(b) of Title VII, 42 U.S.C. s 2000e-5(b), does not bar a civil

---

[83] *See* Maj. Op. at 24 n.12.
[84] *Hicks*, 572 F.2d at 964–65. *See also id*. at 966 ("We reject such a limitation . . . [that would] ask[] the court to penalize a plaintiff for the possible misconduct of the EEOC.").

19

suit by the charging party."[85] This is because an "individual's right to bring a civil action . . . should not be defeated by the EEOC's failure to comply with its statutory obligations."[86] Our holding today is to the contrary.[87]

Finally, the Majority is concerned that failing to dismiss Simko's claim could encourage gamesmanship in the claim filing process by allowing a claimant to "greatly expand an investigation simply by alleging new and different facts when he was contacted by the [EEOC] following his charge."[88] But that alleged risk is not at issue here. An individual who alleges retaliation for the filing of a previous charge is not "gaming the system," because s/he is not complaining of discriminatory conduct that arose *before* the initial claim of discrimination. The retaliation must necessarily come after the charge is filed. Here, in the face of new alleged acts of discrimination, Simko appropriately "include[ed] [in his charge] new acts which occurred during the pendency of proceedings before the Commission."[89]

V.

In sum, I believe that our precedent requires the conclusion that it was quite reasonable for the EEOC, during the course of its investigation of Simko's claim of disability discrimination, after being alerted by Simko about retaliation for the filing of the initial charge, to also investigate the alleged retaliation. That conclusion is reinforced here where the EEOC guidance tells us that such retaliation investigations are routine, and where the EEOC actually investigated the discrimination, concluded that there was evidence of retaliation, and attempted

---

[85] *Id.* at 964 (emphasis added).

[86] *Id.*

[87] The Majority recognizes that it is "unfortunate" that "the EEOC did not promptly react to his November 2014 correspondence," Maj. Op. at 36, but then proceeds to do what our caselaw warns against and punishes Simko for the EEOC's failure.

[88] Maj. Op. at 23 (quoting *Hicks*, 572 F.2d at 967.).

[89] *Ostapowicz*, 541 F.2d at 399.

20

to conciliate the dispute. Accordingly, I must respectfully dissent from my colleagues' analysis.