SUPERIOR COURT
OF THE
STATE OF DELAWARE

SEAN P. LUGG
        JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE: (302) 255-067

November 30, 2023

Kate Butler, Esq.
Kate Butler Law LLC
1509 Gilpin Avenue, Suite 3
Wilmington, Delaware 19806

Michelle D. Allen, Esq.
Allen & Associates
4520 Lancaster Pike, Suite 230
Wilmington, Delaware 19805

> **RE:** ***Melissa Sadowski v. Suppi Construction, Inc., and Carl E. Suppi***
> <u>**C.A. No. N22C-11-149 SPL**</u>

Dear Counsel,

Defendants, Suppi Construction, Inc. ("SCI") and Carl E. Suppi ("Suppi"), have moved to dismiss Plaintiff's, Melissa Sadowski ("Sadowski"), Amended Complaint alleging violations of the Delaware Discrimination in Employment Act ("DDEA"), and common law torts of assault, battery, false imprisonment, and intentional infliction of emotional distress.[1] For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.[2]

---

[1] Mot. Dism. & Op. Brf. (D.I. 25); Am. Compl. (D.I. 21).

[2] In her Brief in Opposition to Defendant's Motion to Dismiss ("Ans. Brf."), Sadowski "concedes that Count 7 (Negligent Infliction of Emotional Distress) should be dismissed and consents to its dismissal." Ans. Brf. (D.I. 27) at 13.

## FACTUAL AND PROCEDURAL BACKGROUND

Sadowski is a construction project manager with more than 20 years of experience.[3]  In October 2020, SCI hired her to serve "as a Project Manager responsible for supervising contractors in the field and related tasks."[4]  By August of 2021, Sadowski was responsible for visiting and overseeing operations at worksites.[5]

Sadowski, a woman, contends that the men working on the sites showed a lack of respect for her authority as the project manager because of her gender.[6]  Sadowski brought her concerns to the attention of SCI management, including Suppi, his son Carl J. Suppi, his wife Karen Suppi, and the SCI human resources officer, Carol Leszczynski.[7]  Sadowski asked Suppi to join her at worksites to "demonstrate to the men working there that she had the authority to give them orders, and that they must respect her."[8]  But, at a worksite meeting on Friday, August 20, 2021, Suppi undermined Sadowski's authority and "exacerbat[ed] the increasing tension between [Sadowski] and the men on the worksite."[9]

---

[3] Am. Compl. at ¶ 12.

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶ 23.

[6] *Id.* at ¶¶ 24-26.

[7] *Id.* at ¶¶ 26-29.

[8] *Id.* at ¶ 32.

[9] *Id.* at ¶ 33.

On Tuesday, August 24, 2021, Suppi entered Sadowski's office and yelled at her for "taking too much time of some of the men in the field."[10] Suppi blocked the doorway to Sadowski's office while he yelled insults and threatened her with physical violence.[11] Suppi refused to allow Sadowski to leave her office, and shoved her twice when she made attempts to get around him to escape.[12] After some time, Suppi allowed Sadowski to leave.[13] Carl J. Suppi and Carol Leszczynski witnessed this interaction.[14] Sadowski reported the altercation to the police.[15]

Sadowski took leave from work to recover from the incident and requested that SCI ensure that, going forward, she would not be left alone with Suppi.[16] SCI responded by reducing Sadowski's responsibilities which, in her view, further undermined "her role and authority in front of the other male employees."[17] Nonetheless, Sadowski "agreed to do a site visit" to "clear the air" and demonstrate that SCI supported her authority.[18] This, too, failed and devolved into a shouting

---

[10] Mot. Dism. at Exh. B, Amended Charge of Discrimination, January 27, 2022 ("Amended Charge Form").

[11] Am. Compl. at ¶¶ 34-35.

[12] *Id.* at ¶¶ 35-36; Amended Charge Form.

[13] Amended Charge Form.

[14] Am. Compl. at ¶ 37.

[15] *Id.* at ¶ 39.

[16] *Id.* at ¶¶ 40, 41.

[17] *Id.* at ¶¶ 42-43.

[18] *Id.* at ¶ 44.

match; Sadowski "left the site in distress."[19] Thereafter, SCI removed Sadowski from the work schedule.[20]

Sadowski agreed to meet with SCI management.[21] During a recorded meeting, Carl J. Suppi threatened to fire Sadowski if she did not drop the criminal charges against Suppi.[22] At this point, Sadowski "felt she could not continue to serve in her role" with SCI, and contends she was constructively discharged as of September 28, 2021.[23]

On January 14, 2022, Sadowski filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on sex in 2021.[24] Subsequently, on January 27, 2022, Sadowski amended the charge to include the Delaware Department of Labor ("DDOL"), alleged discrimination based on sex and retaliation, and narrowed the timeframe within which this conduct occurred to between August 15, 2021 and August 24, 2021.[25] In both documents, Suppi alleges:

On Tuesday August 24, 2021, an incident occurred between Melissa

---

[19] *Id.* at ¶ 45.

[20] *Id.* at ¶ 47.

[21] *Id.* at ¶ 48.

[22] *Id.* at ¶¶ 49-50.

[23] *Id.* at ¶¶ 51-53.

[24] *Id.* at ¶ 6; Mot. Dism. at Exh. A, Charge of Discrimination, January 14, 2022 ("Initial Charge Form").

[25] Amended Charge Form.

Sadowski and Carl E. Suppi, one of the Owners of her employer, Suppi Construction, Inc. Carl E. Suppi entered the office building and began to scream and yell at Ms. Sadowski, accusing her of taking too much time of some of the men in the field. Confused by this outburst, as she had only left the office once that day to get lunch, Carl Suppi began threatening Ms. Sadowski by telling her he was going to "kick her ass" and using expletives while launching a verbal attack. Fearing for her safety, Ms. Sadowski attempted to exit and asked Carl Suppi to move he then shoved her twice and would not let her leave. After a period of some time, Ms. Sadowski was able to leave safely. Carol Leszczinksi (Office Manager/head of Human Resources) was present during this incident in its entirety.[26]

The EEOC issued Sadowski a Determination of Charge and Notice of Right to Sue on August 18, 2022,[27] and, on February 27, 2023, the DDOL issued Sadowski a Final Determination and Right to Sue Notice.[28]

Sadowski filed a complaint in this Court on November 16, 2022 and an amended complaint on May 15, 2023 ("Amended Complaint").[29] Sadowski's Amended Complaint sets forth seven counts: (1) gender discrimination under the DDEA, (2) retaliation under the DDEA, (3) assault, (4) battery, (5) false imprisonment, (6) intentional infliction of emotional distress, and (7) negligent

---

[26] Initial Charge Form. While there are some typographical differences between the two forms, the allegations included on the Amended Charge Form are substantively identical to those made on the Initial Charge Form.

[27] Op. Brf. at Exh. C ("EEOC Right to Sue Letter").

[28] Ans. Brf. at Exh. A ("DDOL Right to Sue Letter").

[29] D.I. 1; D.I. 21.

infliction of emotional distress.[30]  Counts 1 and 2 arise under the DDEA, and are asserted against both Defendants.  Count 5 asserts a common law false imprisonment claim against Suppi directly, and against SCI on a theory of *respondeat superior*. The remaining counts, 3, 4, 6, and 7, assert common-law claims against Defendant Suppi only.

Defendants moved to dismiss Sadowski's Amended Complaint and supplemented their motion with an Opening Brief.[31]  Sadowski responded and submitted an Answering Brief in opposition.[32]  The Court heard oral argument from the parties and took the matter under advisement.[33]

## PARTIES' CONTENTIONS

Defendants contend Sadowski: (1) failed to exhaust administrative remedies under the Delaware Discrimination in Employment Act ("DDEA") in violation of 19 *Del. C.* § 714(a);[34] (2) failed to state a valid claim for gender discrimination or retaliation under the DDEA;[35] (3) failed to substantiate her claim of constructive discharge;[36] and (4) alleged claims precluded by the Delaware Worker's

---

[30] Am. Compl.

[31] D.I. 25.

[32] D.I. 27.

[33] D.I. 29, 30.

[34] Op. Brf. at 4.

[35] *Id.* at 13.

[36] *Id.* at 17.

Compensation Act ("DWCA") exclusivity statute, 19 *Del. C.* § 2304 *et seq.*[37] Sadowski responds that she exhausted her administrative remedies under the DDEA and received the requisite DDOL Right to Sue Notice.[38] She argues that the tort claims are not subject to the exclusivity provisions of the DWCA because they allege acts committed with the specific intent to cause her injury.[39] And, Sadowski contends that her Amended Complaint sets forth sufficient facts in support of each element of her claims and, thus, satisfies the requirements of Delaware's pleading standard.[40]

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted under Superior Court Civil Rule 12(b)(6),[41] all well-pleaded allegations in the complaint must be accepted as true.[42] Even vague allegations are considered well-pleaded if they give the opposing party notice of a claim.[43] The Court must

---

[37] *Id.* at 19.

[38] Ans. Brf. at 4.

[39] *Id.* at 10.

[40] *Id.* at 1, 7-9; Del. Super. Ct. Civ. R. 8(a); *see also VLIW Technology v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) ("Such a statement must only give the defendant fair notice of a claim and is to be liberally construed).

[41] Del. Super. Ct. Civ. R. 12(b)(6).

[42] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[43] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

7

draw all reasonable inferences in favor of the non-moving party.[44] The Court, however, will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[45] "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[46] Dismissal is not appropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[47]

## ANALYSIS

### I. SADOWSKI EXHAUSTED HER REMEDIES UNDER THE DELAWARE DISCRIMINATION IN EMPLOYMENT ACT ("DDEA")

The DDEA provides employees protection from unlawful employment discrimination.[48] Under 19 *Del. C.* § 712(b), the DDEA provides the "sole remedy for claims alleging a violation of the [DDEA] to the exclusion of all other remedies."[49] DDEA "claims include discharging an employee or discriminating

---

[44] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168 (Del. 2006).

[45] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citation omitted).

[46] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings,* LLC, 27 A.3d 531, 537 (Del. 2011) (citation omitted).

[47] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 871–72 (Del. 2020) (cleaned up).

[48] *See* 19 *Del. C.* Ch. 7, Subch. II.

[49] 19 *Del. C.* § 712(b).

against an employee as to 'compensation, terms, conditions or privileges of employment' based on gender."[50] The person claiming a DDEA violation must first "file a charge of discrimination within 300 days of the alleged unlawful employment practice or its discovery, setting forth a concise statement of facts, in writing, verified and signed by the charging party."[51] "After investigation, the [DOL] shall issue a determination of either 'reasonable cause' or 'no reasonable cause' to believe that a violation occurred or is occurring . . . All cases resulting in a 'no cause' determination will receive a corresponding Delaware Right to Sue Notice."[52] "A charging party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same."[53]

Because the DDEA is patterned from 42 U.S.C. § 2000(e) of the federal Civil Rights Act of 1964 (Title VII), "the language of the DDEA is virtually identical to its federal counterpart."[54] "Delaware Courts take the 'interpretive lead' from District Court and Third Circuit Court of Appeals decisions regarding interpretations of Title

---

[50] *Sees v. Mackenzie*, 2023 WL 5202675, at *3 (Del. Super. Ct. Aug. 14, 2023) (citing 19 *Del. C.* § 711(b)(1), 712(b)).

[51] 19 *Del. C.* § 712(c)(1).

[52] 19 *Del. C.* § 712(c)(3).

[53] 19 *Del. C.* § 714(a).

[54] *Ennis v. Del. Transit Corp.,* 2015 WL 1542151, at *5 (Del. Super. Ct. Mar. 9, 2015) (cleaned up).

VII."[55]  "Delaware State Courts look to the tests formulated by the *McDonnell Douglas Corp. v. Green* line of cases for guidance with regard to cases grounded on an alleged violation of the DDEA."[56]  Because it is unlikely that an employer who discriminates will announce discriminatory intent, the *McDonnell Douglas* framework "allow[s] plaintiffs to proceed without direct proof of illegal discrimination where circumstances are such that common sense and social context suggest discrimination occurred."[57]

Counts 1 and 2 of Sadowski's Amended Complaint allege gender discrimination (Count 1) and retaliation (Count 2) in violation of the DDEA.  To bring these claims in this Court, Sadowski must first comply with the statutorily established administrative process of the DDEA.  The record before the Court establishes that she has done so.

Under 19 *Del.C.* § 712(b), the Delaware Department of Labor has jurisdiction "over all cases arising under this chapter, affording review and oversight of employment practices in Delaware."[58]  It is not until "termination of the administrative process by the Department" that a plaintiff may file a civil action in

---

[55] *Id.* (cleaned up).

[56] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[57] *Iadimarco v. Runyan*, 190 F.3d 151, 157 (3rd Cir. 1999).

[58] 19 *Del.C.* § 712(b).

the Superior Court alleging unlawful employment practices.[59] "The parameters of a civil action are defined by the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination."[60] And the claims in the subsequent civil action must be limited to "the scope of the [DDOL] investigation which can reasonably be expected to grow out of the charge of discrimination[.]"[61] To address Defendant's challenge, the Court must determine whether Sadowski complied with the requirements of § 712(b), and, that she did so with regard to the claims now before the Court.

A charge of discrimination must be initially filed with the DDOL "within 300 days of the alleged unlawful employment practice or its discovery."[62] Sadowski filed an Amended Charge of Discrimination on January 27, 2022, alleging

---

[59] *Id.*; 19 *Del. C.* § 711(b)(1).

[60] *Floray v. Dargan Extensions, LLC,* 2016 WL 4442210, at *3 (Del. Super. Ct. Aug. 19, 2016) (citing *Webb v. City of Phila.,* 562 F.3d 256, 263 (3rd Cir. 2009)).

[61] *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-399 (3d Cir. 1976) ("In order to comply with the spirit of the Act, there must be some limitation on suits in the district court so that the Commission will have the first opportunity to examine the allegations of discrimination. Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, *Gamble v. Birmingham Southern R.R. Co.*, 514 F.2d 678 (5th Cir. 1975); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), including new acts which occurred during the pendency of proceedings before the Commission, *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569 (9th Cir. 1973)").

[62] 19 *Del. C.* §§ 712(b), (c)(1).

11

discriminatory conduct occurring in August of 2021.[63] The Amended Charge was therefore timely filed.

Defendants argue that the Amended Charge evidences Sadowski's failure to present the DDEA allegations to the DDOL.[64] They contend that the form lacks a DDOL case number and a "check" in the box to elect referral to the DDOL.[65] But the Amended Complaint supports a reasonable inference that Sadowski dually filed the Amended Charge with the DDOL because it alleges that she received a DDOL Right to Sue Letter.[66] The DDOL provided her notice of her right to sue on February 27, 2023, and she filed her May 15, 2023 Amended Complaint within 90 days of receipt of that notice. While the path leading to Sadowski's Amended Complaint may tread slightly off the beaten track, she ultimately complied with statutory requirements.

The Court understands Defendants' argument that "there is no evidence that the DDOL had record of the charge before February 2023"[67] to challenge both the existence and timeliness of Sadowski's charge, but the DDOL did act on Sadowski's allegations in February 2023. At this stage, the Court must construe the extant record

---

[63] *See* Amended Charge.

[64] Op. Brf. at 4.

[65] *Id.*

[66] Am. Compl. at ¶ 9.

[67] Op. Brf. at 10.

in the light most favorable to Sadowski. The Amended Complaint suggests that the charge was referred to the DDOL within the 300-day period, and the record is devoid of facts to the contrary.[68] The record shows Sadowski exhausted the administrative remedies under the DDEA before presenting her claims to this Court.

The administrative charge serves as the yardstick against which the Court measures, or ascertains, administrative exhaustion as a prerequisite to filing an action at law.[69] The administrative pre-suit requirements, which include filing a charge and receiving a right-to-sue letter from the DDOL, are "essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action."[70] The Supreme Court has also emphasized that a fundamental aim of the pre-suit requirements is to "give prompt notice to the employer" and "encourage the prompt processing of all charges of employment discrimination."[71]

---

[68] Similarly, Defendants' argument that the Amended Charge is "silent as to any state law claims" is unavailing because "the language of the DDEA is virtually the same as its federal counterpart," *Ennis*, 2015 WL 1542151, at *5, and a complainant may file the same charge simultaneously with the EEOC and the DDOL.

[69] Op. Brf. at 12 (citing *Simko v. United States Steel Corp.*, 992 F.3d 198 (3d Cir. 2021) cert. denied, 142 S. Ct. 760 (2022)). As explained above, Delaware Courts follow the guidance provided by District Court and the Third Circuit Court of Appeals when assessing the provisions of the DDEA. *See supra* n.53.

[70] *Simko*, 992 F.3d at 206.

[71] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 121, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

13

The Third Circuit Court of Appeals has explained that "the 'relevant test' for determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether 'the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom."[72] "The exhaustion inquiry is highly fact specific."[73] The Court must evaluate the administrative charge and the alleged unexhausted claim "on a case-by-case basis."[74]

Sadowski's Amended Charge alleges gender discrimination and retaliation occurring between August 15, 2021, and August 24, 2021. Sadowski's claims under the DDEA (Counts 1 and 2) encompass the events within that timeframe and the alleged discriminatory or retaliatory acts arising therefrom. Suppi's alleged site-visit outburst and subsequent office attack fall squarely within this time frame. Further, the Amended Complaint alleges that gender discrimination occurred when SCI ignored "her requests not to have to be in the presence of Defendant [Carl] Suppi" following the August 24, 2021 incident.[75] And the claim more broadly states that "Suppi's acts and omissions constituted discrimination on the basis of

---

[72] *Simko*, 992 F.3d at 207 (quoting *Waiters v. Parsons*, 729 F.3d 233, 237 (3d Cir. 1984)).

[73] *Simko*, 992 F.3d at 207.

[74] *Id.*

[75] Am. Compl. ¶ 57.

[Sadowski's] gender that is causally related to the adverse employment actions taken against her."[76] These claims flow from the conduct alleged in the administrative charge, and the Court finds that they were administratively exhausted and are properly raised in the Amended Complaint *sub judice*.

## II. Sadowski's Gender Discrimination and Retaliation Claims Survive

A claim for gender discrimination requires Sadowski to prove: (1) she belonged to a protected class, (2) she was qualified for the position, (3) she was terminated, and (4) the circumstances surrounding the termination give rise to an inference of illegal discriminatory motive.[77] Defendants do not contest that Sadowski, a woman, belonged to a protected class, nor do they challenge her qualifications; rather, they contend that Sadowski fails to establish (1) that she was terminated, and (2) that the facts give rise to an inference of illegal discriminatory motive on behalf of Suppi or SCI.

To satisfy the element of termination, Sadowski must allege that she was either terminated or constructively discharged. Constructive discharge includes threats of discharge, suggestion or encouragement of resignation, a demotion or reduction of pay or benefits, involuntary transfer to a less desirable position,

---

[76] Am. Compl. ¶ 58.

[77] *Conley v. State*, 2011 WL 113201, at *4 (Del. Super. Ct. Jan. 11, 2011).

alteration of job responsibilities, and unsatisfactory job evaluations.[78]  Here, it is reasonably conceivable that the combined effect of Suppi yelling at Sadowski for taking up too much time of the men in the field, SCI reducing her worksite oversight responsibilities, SCI removing her from the work schedule, and SCI threatening her termination if she did not drop the charges against Suppi constituted her constructive discharge – Sadowski reasonably felt she could not return to work.  Treating these well-pleaded allegations as true, Sadowski sufficiently pled constructive discharge.

To establish discriminatory motive, Sadowski need only present "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected."[79]  Here, Sadowski, a woman, was charged with supervising a group comprised predominantly, if not exclusively, of men.  Suppi and SCI favored Sadowski's male subordinates and refused to support Sadowski in her role.  The Amended Complaint asserts Sadowski had the authority and responsibility to direct her male subordinates to perform the work as she saw fit but lacked the support and backing of her employer when she attempted to do her job.[80]  Rather, her male subordinates ignored her direction because SCI and Suppi were loath to act.  As this Court has recognized, "a plaintiff

---

[78] *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993).

[79] *Ennis*, 2015 WL 1542151, at *5.

[80] Am. Compl. at ¶¶ 23-33.

is almost exclusively confined to proving [her] case with indirect evidence [because] '. . . an employer who discriminates will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent.'"[81] The Amended Complaint alleges sufficient facts to support a reasonable inference that SCI and Suppi engaged in gender discrimination by condoning employee disobedience because Sadowski is a woman.

A claim for retaliation discrimination requires Sadowski to prove: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.[82] Sadowski reported her gender discrimination to her supervisors and suffered a near immediate adverse employment action when Suppi, SCI's owner, allegedly assaulted her.[83] Then, in the wake of that incident, and while Sadowski attempted to recover, SCI reduced her work. The Court finds that the Amended Complaint sufficiently alleges claims for relief under the DDEA for gender and retaliation discrimination to survive a motion to dismiss.

---

[81] *Ennis*, 2015 WL 1542151, at *5 (quoting *Iadimarco v. Runyan*, 190 F.3d 151, 157 (3d Cir. 1999)).

[82] *Ennis*, 2015 WL 1542151, at *5.

[83] Am. Compl. ¶¶ 26-33.

## III. SADOWSKI SUFFICIENTLY PLEADS CONSTRUCTIVE DISCHARGE

As explained above, Sadowski has sufficiently pled constructive discharge to satisfy that element of her DDEA claims.[84]

## IV. SADOWSKI'S INTENTIONAL TORT CLAIMS ARE NOT BARRED BY WORKER'S COMPENSATION EXCLUSIVITY

Defendants argue that Sadowski's tort claims are barred because the Delaware Worker's Compensation Act ("DWCA") provides the sole remedy for work-related injury claims.[85] The DWCA provides that "every employer and employee, adult and minor, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies."[86] But the Delaware Supreme Court has determined that allegations involving "a true intent by the employer to injure the employee" fall outside of the DWCA and remain actionable as common law tort claims.[87] To avoid "the exclusivity provision of 19 *Del. C.* § 2304, a party, therefore, must allege

---

[84] *See supra* pp. 15-16.

[85] Op. Brf. at 19. Sadowski concedes that her claim of Negligent Infliction of Emotional Distress (Count 7) must be dismissed (Ans. Brf. at 13); the Court, therefore, assesses the application of the DWCA to Sadowski's intentional tort claims.

[86] 19 *Del. C.* § 2304.

[87] *Rafferty v. Hartman Walsh Painting Co.*, 760 A.2d 157, 159 (Del. 2000).

18

specific, intentional tortious conduct."[88]  Sadowski does so here; therefore, her claims of assault, battery, and false imprisonment are not barred by the DWCA.

"The tort of assault requires that the actor act with the intent of causing a harmful or offensive contact with the persona of another, or an imminent apprehension of such contact, and the person is thereby put in imminent apprehension of such contact."[89]  Sadowski alleges that Suppi intentionally caused her to fear for her safety when he approached her, blocked her from exiting her office and yelled that he was going to "kick her ass."  These allegations are sufficient to state a claim for Suppi's intentional assault upon Sadowski.

"[T]he tort of battery is the intentional, unpermitted contact on the person of another which is harmful or offensive."[90]  Sadowski alleges that Suppi shoved her twice while yelling at her and intending to prevent her from leaving her office.  These allegations are sufficient to support a claim for Suppi's intentional battery of Sadowski.

"The elements of a claim for false imprisonment are: (a) a restraint which is both (b) unlawful and (c) against one's will."[91]  "The restraint may be accomplished

---

[88] *Id.* at 161.

[89] *Tilghman v. Delaware State University*, 2012 WL 3860825, at *5 (citing Restatement (Second) of Torts § 21 (1965)).

[90] *Tilghman*, 2012 WL 3860825, at *5 (quoting *Brzoska v. Olson*, 665 A.2d 1355, 1360 (Del. 1995)).

[91] *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 368 (Del. 2013) (cleaned up).

by physical force, by threats of force or intimidation or by assertion of legal authority."[92] Sadowski alleges that Suppi restrained her from leaving her office through force, that his restraint was unlawful, and that he ignored her multiple requests to leave the office. Because Suppi intentionally deprived Sadowski of her freedom of movement, her claim is not barred by the exclusivity provision of the DWCA.[93]

To state a claim for IIED, a plaintiff must allege "extreme and outrageous conduct" that "intentionally or recklessly" causes severe emotional distress.[94] Even if the alleged conduct constitutes "tortious or even criminal" acts toward the plaintiff, it does not necessarily, by itself, rise to the level of "extreme and outrageous conduct."[95] The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[96] Mere insults or indignities, even by persons abusing their positions of authority over the subject, do

---

[92] *Id.*

[93] *See Lynch v. Mellon Bank of Delaware*, 1992 WL 51880, at *4 (Del. Super. Ct. Mar. 12, 1992).

[94] *Root v. MaidPro Wilmington*, 2022 WL 17039161, at *3 (Del. Super. Nov. 17, 2022).

[95] *Id.* (discussing the "Restatement's comment as to what conduct might be sufficiently extreme and outrageous to warrant IIED liability.")

[96] *Id.*

20

not give rise to liability.[97]  It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary [for IIED]."[98]  In *Tolliver,* the Court found that "no reasonable jury could find that Defendants engaged in conduct that was so severe that a reasonable person could not be expected to endure it."[99]  Here, Sadowski alleges she suffered discrimination in employment, insults, assault, battery, and false imprisonment at the hands of Suppi.  This recitation of facts "to an average member of the community [could] arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'"[100]  At this stage, viewing the record in the light most favorable to Sadowski, she presents a conceivable claim of IIED which is not precluded by DWCA exclusivity.

## CONCLUSION

The Court, as it must in considering a motion to dismiss, has accepted all well-pleaded allegations in the complaint as true, and has drawn all reasonable inferences in favor of Sadowski, the non-moving party.  Sadowski presents facts upon which recovery is conceivable.  In reaching this conclusion, the Court does not, because it must not, assess the relative strength of these allegations.  Applying these well-

---

[97] Restatement 2nd Torts, Comment (e) § 46.

[98] *Tolliver v. Trinity Parish Foundation*, 2017 WL 3288119 (D. Del. Aug. 2, 2017) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).

[99] *Id.* at *15.

[100] *Root*, 2022 WL 17039161, at *3 (citing Restatement (Second) of Torts § 46(d)).

21

established principles to the limited facts presently before the Court, and accepting Sadowski's concession as to Count 7, Defendants' Motion to Dismiss is **GRANTED** as to Count 7 and **DENIED** as to the balance of the Amended Complaint.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge